En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Las Sucns. de Francisco Vega Marrero, Mariana Rodríguez Santana y Otros<br><br>Apelantes<br><br>vs.<br><br>Autoridad de Energía Eléctrica, Las Compañías Aseguradoras y Otros<br><br>Apelados<br><br>José Velázquez Hernández y María Esther Blanco, Etc.<br><br>Apelantes<br><br>vs.<br><br>Estado Libre Asociado de Puerto Rico, Autoridad de Energía Eléctrica y Otros<br><br>Apelados | Certiorari<br><br>99 TSPR 140 |

Número del Caso: CC-1998-307

Abogados de Sucns. Fco. Vega Marrero,
Mariana Rodríguez Santana, etc.:    Lcdo. Féliz A. Toro, Jr.
                                    Lcdo. Carlos Teissonniere León

Abogados de la AEE:                 Lcdo. Pedro Toledo González
                                    Lcdo. Adalberto Alomar Rosario

Abogado de General Accident:        Lcdo. José R. Goyco Amador

Abogado de Lab. Clínico Cidreño:    Lcdo. Edwin Torruellas Iglesias

Tribunal de Primera Instancia Sala, Superior de Ponce

Tribunal de Circuito de Apelaciones: Circuito Regional V

Juez Ponente: Hon. Feliciano Acevedo

Fecha: 9/21/1999

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

```
                                   *
Las Sucns. de Francisco Vega       *          Certiorari
Marrero, Mariana Rodríguez Santana *
y Otros                            *
                                   *          CC-1998-307
         Apelantes                 *
                                   *
           vs.                     *
                                   *
Autoridad de Energía Eléctrica,    *
Las Compañías Aseguradoras y Otros *
                                   *
         Apelados                  *
                                   *
_____  *
                                   *
José Velázquez Hernández y          *
María Esther Blanco, Etc.          *
                                   *
         Apelantes                 *
                                   *
           vs.                     *
                                   *
Estado Libre Asociado de Puerto Rico, *
Autoridad de Energía Eléctrica y Otros *
                                   *
         Apelados                  *
                                   *                  *
* * * * * * * * * * * * * * * * * * *
```

Opinión de Conformidad emitida por el Juez Asociado señor FUSTER BERLINGERI, a la que se une el Juez Presidente señor ANDRÉU GARCÍA.

San Juan, Puerto Rico, a 21 de septiembre de 1999.

Nos toca determinar si la Autoridad de Energía Eléctrica procedió de forma diligente, de manera tal que merezca ser exonerada de toda responsabilidad en una situación en la cual la alta peligrosidad, de unas líneas eléctricas energizadas de alto voltaje que cayeron dentro de un río, fue ocasionada inicialmente por actos delictivos de terceros.

I

Temprano en la mañana del viernes 21 de junio de 1991, José A. León Rosario transitaba por la carretera núm. 139 del barrio Maragüez de Ponce en ruta hacia las oficinas de la compañía Las Piedras Construction, empresa para la cual trabajaba, ubicada en el barrio referido. Antes de llegar a su oficina, se percató de que había un poste de la Autoridad de Energía Eléctrica tirado en el suelo a la orilla de la aludida carretera núm. 139. También observó la presencia de aceite sobre el pavimento.

Una vez en su oficina, León Rosario puso a funcionar su computadora para comenzar sus labores, y notó que el voltaje estaba bajo, lo que afectaba el uso de la computadora. Procedió entonces a llamar a su jefe, José A. Soto, por radio teléfono y le explicó el problema que estaba confrontando. Soto le indicó que acudiera a la oficina de la Autoridad de Carreteras, ubicada en la misma carretera núm. 139, cercana a la oficina de Las Piedras Construction, y que de allí llamara a las oficinas de la Autoridad de Energía Eléctrica, para informarle a esta agencia tanto el problema del voltaje como el del poste caído. Así lo hizo León Rosario. Sin embargo, en su conversación telefónica con un funcionario de la Autoridad de Energía Eléctrica no pudo informarle el lugar exacto donde estaban ubicadas las oficinas de Las Piedras Construction ni aquel donde se encontraba el poste caído, por desconocer estos datos. Por tal razón, cuando el empleado de la Autoridad de Energía Eléctrica que contestó la llamada inquirió sobre el particular, León Rosario le indicó que era en el sector Los Fondos del barrio Maragüez. Le indicó, además, que cuando acudieran al lugar para investigar las averías, se detuvieran en las oficinas de la Autoridad de Carreteras para que allí les explicaran donde quedaban las oficinas de Las Piedras Construction, en las cuales le darían detalles más precisos sobre los problemas informados. Esta llamada fue anotada como recibida por el despachador de servicios de la Autoridad de Energía Eléctrica a las 8:40 a.m. de ese día.

Antes de la llamada de León Rosario, cerca de las 7:35 a.m. del mismo día, la Autoridad de Energía Eléctrica había recibido otra llamada telefónica mediante la cual se le informó sobre un problema de bajo voltaje en el área de la represa Cerrillos, ubicada en el Km. 6 de la misma carretera núm. 139 del barrio Maragüez de Ponce, donde realizaba trabajos el Cuerpo de Ingenieros del Ejercito de Estados Unidos.

Ese mismo día, una brigada de tres empleados de la Autoridad de Energía Eléctrica fue hasta la represa Cerrillos, preguntaron a algunos empleados sobre el problema de bajo voltaje referido, inspeccionaron el área haciendo una serie de pruebas, y subieron hasta los montes de los alrededores donde se encontraban localizados postes de energía eléctrica. Mientras realizaban la inspección sobre el asunto del bajo voltaje en dicho lugar, recibieron una llamada del despachador de la Autoridad de Energía Eléctrica notificándoles de una queja recibida sobre un poste caído en el sector Los Fondos y dándoles como referencia la oficina de la Autoridad de Carreteras. El despachador omitió indicar que preguntaran por la localización de la oficina de Las Piedras Construction; tampoco informó a la brigada el problema de bajo voltaje que afectaba a esta empresa.

La brigada acudió hasta la caseta de la Autoridad de Carreteras y allí preguntaron si sabían dónde había un poste caído. Un empleado les indicó que había uno a orillas de la carretera del sector Los Fondos. Los miembros de la brigada se dirigieron entonces al lugar indicado. Allí encontraron dos pedazos de poste cerca del pavimento y los movieron hacia la orilla. La brigada entonces notificó al despachador de la Autoridad de Energía Eléctrica que los pedazos de poste no entorpecían el tránsito en la carretera ni representaban peligro, pues no estaban energizados, y solicitaron que enviaran otra brigada para recoger los pedazos de poste referidos. Esta llamada se registró en la bitácora de la Autoridad de Energía Eléctrica a las 10:00 a.m. Posteriormente, los empleados de la brigada volvieron al área de la

represa y continuaron investigando el problema del bajo voltaje que desde allí se había informado. La brigada no pudo encontrar la causa de éste.

Aproximadamente a las 11:30 a.m. del mismo día, León Rosario volvió a llamar a la Autoridad de Energía Eléctrica al percatarse de que no habían llegado empleados de esta agencia a las oficinas de Las Piedras Construction a investigar su queja previa sobre el problema que experimentaba con el voltaje y sobre el poste que continuaba caído en la carretera núm. 139. El despachador de servicios le constestó a León Rosario que ya se había enviado una brigada al área. La brigada a la que se refería el despachador era la misma que, una hora y media antes, había informado haber encontrado y movido hacia la orilla de la carretera dos pedazos de poste no energizados en el sector Los Fondos.

Al día siguiente, la Autoridad de Energía Eléctrica recibió otra llamada mediante la cual se informó que continuaba el problema de bajo voltaje en el área de la represa Cerrillos. Aproximadamente a las 8:00 a.m., se volvió a enviar una brigada al lugar. Los empleados de la Autoridad de Energía Eléctrica investigaron el área y, nuevamente, abandonaron el lugar alrededor de las 11:25 a.m. sin encontrar la causa del problema de bajo voltaje. Poco más tarde, a la 1:00 p.m., se recibió una tercera queja desde la represa referente otra vez al problema del voltaje. Una vez más se envió una brigada para investigar el problema en el área de la represa pero la búsqueda no rindió frutos. Los empleados examinaron también las líneas en la salida de la sub-estación a la entrada del barrio Maragüez pero no encontraron la causa del problema referido. Aproximadamente a las 3:30 p.m., la brigada abandonó el área.

El domingo 23 de junio de 1991, alrededor de las 3:00 de la tarde, los esposos Francisco Vega Marrero y Mariana Rodríguez Santana, de 55 y 35 años de edad, respectivamente, su hijo Martín Vega Rodríguez, de 12 años, y un amigo de éste, José Antonio Velázquez Blanco, de 14 años, se encontraban en el Río Maragüez de Ponce, a la altura del Km. 11 de la

carretera núm. 139 antes mencionada. Los niños se fueron caminando río arriba mientras que don Francisco y doña Mariana se quedaron abajo. Luego de un rato, don Francisco y doña Mariana extrañaron la presencia de los niños y comenzaron a buscarlos por los alrededores del río. En la búsqueda, se toparon con Héctor Manuel Ruiz Rueda, quien también se encontraba pescando y disfrutando con su familia en el río, quien les informó que no había visto a los dos niños. Minutos más tarde, Ruiz Rueda oyó unos gritos y corrió río arriba hacia donde habían caminado don Francisco y doña Mariana en la búsqueda de los niños. Al acercarse al área, vio a doña Mariana que caminaba por el río, en un área donde el agua le llegaba a nivel de las rodillas y, de momento, la vio caer tendida sobre el agua. Ruiz Rueda se acercó a doña Mariana para ayudarla pero sintió una corriente eléctrica fuerte hasta el nivel de sus rodillas y saltó inmediatamente sobre una piedra. Luego trató de tomarla por el pelo pero, nuevamente, sintió corriente y la soltó. Don Francisco, quien también estaba en el agua, se sostenía de una piedra mientras pedía ayuda a Ruiz Rueda. Cuando éste se dirigió a ayudarle, don Francisco cayó tendido sobre el río. En ese momento, Ruiz Rueda se percató de que dos niños estaban flotando sobre el agua como si estuvieran muertos. Ante esta situación, Ruiz Rueda se asustó y se dirigió corriendo hacia su familia y les indicó que salieran del río. Luego de haber solicitado ayuda, llegaron al lugar miembros de la Policía, agentes de la Unidad de Operaciones Tácticas y una unidad de Rescate.

En el área donde ocurrieron las cuatro muertes había dos cables de energía eléctrica que salían desde la orilla del río, pasaban por una roca grande, penetraban al agua y salían hasta la otra orilla. Alrededor de las 5:00 p.m., la Autoridad de Energía Eléctrica volvió a recibir una quinta llamada relacionada con el asunto que nos ocupa. Desgraciadamente, en esta ocasión la llamada tenía el propósito de informar las cuatro muertes ocurridas en el río y la localización de los cables en el río Maragüez. Empleados de la Autoridad de Energía

Eléctrica acudieron al lugar del accidente y cortaron los cables. Uno de estos cables estaba energizado y fue su corriente la que provocó las cuatro muertes por electrocución. Los miembros de la Policía procedieron entonces a remover los cadáveres del agua.

A orillas de la carretera núm. 139, cerca del área del río en el cual murieron las cuatro personas, había un poste con tendido eléctrico que estaba en el suelo y tenía señales de haber sido cortado, aparentemente, para remover el transformador y apropiarse de él. El poste estaba tirado a orillas de la carretera y en el lugar se encontró una mancha de aceite que cubría parte del área de rodaje, proveniente del transformador que fue removido del poste. Desde este poste salían dos cables que se extendían sobre la yerba que cubría el área, bajaban por una ladera que llegaba hasta el río donde ocurrió el accidente y cruzaban por el río hasta llegar a la otra orilla. Antes de ser derribado el poste, sus cables pasaban sobre el río a una distancia lineal de 800 a 1,000 pies y formaban parte del sistema de energía eléctrica del área. Estos cables transportaban 2,400 kilovatios de energía eléctrica, lo que se considera como alto voltaje. **Este era precisamente el poste que dos días antes el empleado de Las Piedras Construction había informado a la Autoridad de Energía Eléctrica que estaba caído**.

Posteriormente, los familiares de las cuatro personas que murieron electrocutadas instaron demandas separadas de daños y perjuicios. En sus respectivas acciones, los familiares imputaron negligencia a la Autoridad de Energía Eléctrica y alegaron que, de ésta haber investigado debidamente las llamadas de alerta del empleado de Las Piedras Construction sobre el poste caído y las variaciones en voltaje en el área, se hubiese percatado de la presencia del cable energizado en el río y se hubiesen evitado las cuatro muertes por electrocución. En una de las acciones civiles incoadas figura como demandada la Autoridad de Energía Eléctrica, y como terceros demandados el Estado Libre Asociado de Puerto Rico (E.L.A.), Edwin de Jesús Alvarado, Marcos

A. Velázquez Martínez y José M. Colón Acevedo; estos tres últimos, alegadamente, cortaron el poste cuyo cable energizado provocó las cuatro muertes en el río. Por otro lado, en la otra acción civil, figuran como demandados la Autoridad de Energía Eléctrica; sus aseguradoras CIGNA Insurance Co., Nationwide Mutual Insurance Co., Royal Insurance Co., Eastern America Insurance Co. y General Accident Insurance Co.; y Edwin de Jesús Alvarado, Marcos A. Velázquez Martínez y José M. Colón Acevedo. La Autoridad de Energía Eléctrica presentó demanda de terceros contra el E.L.A. (Policía de Puerto Rico) y contra los tres demandados naturales señalados anteriormente. Ambos casos fueron consolidados mediante Resolución dictada el 17 de febrero de 1993. Tras varios incidentes procesales, el tribunal de instancia anotó la rebeldía contra Edwin de Jesús Alvarado, Marcos A. Velázquez Martínez y José M. Colón Acevedo tanto en las demandas principales como en las demandas de tercero.

Las partes acordaron la separación de los aspectos de responsabilidad y daños, por lo que la vista judicial celebrada fue a los efectos de determinar exclusivamente la responsabilidad de los demandados y los terceros demandados. El 7 de junio de 1996, el foro de instancia, luego de apreciar la prueba presentada, emitió sentencia parcial mediante la cual desestimó las demandas de tercero presentadas contra el E.L.A.; declaró sin lugar las demandas contra la Autoridad de Energía Eléctrica, y con lugar las acciones instadas contra Edwin de Jesús Alvarado, Marcos A. Velázquez Martínez y José M. Colón Acevedo.

Razonó el foro de instancia que, si bien se puede "deducir que si los empleados de la Autoridad (de Energía Eléctrica) hubiesen llegado hasta Las Piedras Construction probablemente hubiesen visto el poste y hubiesen resuelto el problema del cable energizado... entendemos que no hubo omisión negligente de la Autoridad que nos lleve a imponerle responsabilidad." Señaló que, "debido a que las variaciones en voltaje pueden deberse a varios factores... el problema de voltaje reportado... no necesariamente implicaba que se hubiese caído un poste [y/o] un

cable energizado." "Los empleados de la Autoridad hicieron una extensa búsqueda de la causa del problema sin éxito alguno." Por tal razón, el tribunal de instancia determinó que "[d]e acuerdo a los hechos y condiciones prevalecientes (la actuación de la Autoridad de Energía Eléctrica) fue razonable." El tribunal de instancia determinó, además, que debido a que "[l]a causa directa de los daños sufridos por los demandantes fue la acción culposa de los tres demandados que cortaron el poste" éstos fueron los únicos responsables de las muertes ocurridas. Posteriormente, el foro de instancia declaró sin lugar la solicitud de reconsideración presentada por los demandantes.

Inconformes, el 2 de octubre de 1996, los demandantes acudieron ante el Tribunal de Circuito de Apelaciones. Mediante sentencia de 13 de marzo de 1998, notificada el 26 de marzo del mismo año, el foro apelativo confirmó la determinación del tribunal de instancia.

El 24 de abril de 1998, los demandantes acudieron ante nos. Alegaron, en síntesis, que erró el tribunal apelativo al no aplicar debidamente las normas pertinentes de diligencia, previsibilidad y nexo causal, y al confirmar la determinación del foro de instancia que eximió de toda responsabilidad a la Autoridad de Energía Eléctrica aun cuando ese tribunal concluyó que si los empleados de la recurrida hubiesen acudido a las oficinas de Las Piedras Construction se hubiese localizado el poste caído, lo que hubiese evitado las cuatro (4) muertes que aquí nos conciernen.

El 30 de junio de 1998, expedimos el recurso. El 31 de diciembre de 1998, la recurrida, Autoridad de Energía Eléctrica, presentó su alegato.

II

En Puerto Rico, la responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por lo dispuesto en el Art. 1802 de nuestro Código Civil. 31 L.P.R.A. sec. 5141. Montalvo v. Cruz, Opinión de 4 de febrero de 1998, 144 D.P.R. ___, 98 JTS 6; Toro Aponte

v. E.L.A., Opinión de 31 de enero de 1997, 142 D.P.R. __, 97 JTS 18; Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990). Para que surja una causa de acción bajo este artículo, es necesario que ocurra un daño, una acción u omisión culposa o negligente y que exista una relación o nexo causal entre el daño y la conducta culposa o negligente. Montalvo v. Cruz, supra; Toro Aponte v. E.L.A., supra; Ramírez v. E.L.A., Opinión de 19 de marzo de 1996, 140 D.P.R. __, 96 JTS 41; Tormos Arroyo v. D.I.P., Opinión de 13 de marzo de 1996, 140 D.P.R. __, 96 JTS 34; Monllor v. Soc. Gananciales, Opinión de 13 de junio de 1995, 138 D.P.R. __, 95 JTS 77; J.A.D.M. v. Centro Com. Plaza Carolina, 132 D.P.R. 785 (1992); Hernández v. Fournier, 80 D.P.R. 93 (1957).

Anteriormente hemos definido la culpa o negligencia como la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Montalvo v. Cruz, supra; Ramos v. Carlo, 85 D.P.R. 353 (1962). Este deber de anticipar y prever los daños no se extiende a todo peligro imaginable sino a aquel que llevaría a una persona prudente a anticiparlo. Tormos Arroyo v. D.I.P., supra; Elba A.B.M. v. U.P.R., supra; Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987); Pacheco v. A.F.F., 112 D.P.R. 296 (1982); Hernández v. La Capital, 81 D.P.R. 1031 (1960). De igual forma, tampoco es necesario que se haya anticipado la ocurrencia del daño en la forma precisa en que ocurrió; basta con que el daño sea una consecuencia natural y probable del acto u omisión negligente. Tormos Arroyo v. D.I.P., supra.

Según mencionamos anteriormente, para que exista una causa de acción bajo el Art. 1802 de nuestro Código Civil, supra, es necesario que exista un nexo o relación causal entre el daño sufrido y la conducta negligente. Es norma reiterada en nuestra jurisdicción que la doctrina que nos rige respecto al nexo o relación causal es la doctrina de la causalidad adecuada, según la cual "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que

ordinariamente lo produce según la experiencia general." Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, a la pág. 134 (1974). Véase, además, Toro Aponte v. E.L.A., supra; Elba A.B.M. v. U.P.R., supra; Aseg. Lloyd´s London v. Cía. Des. Comercial, 126 D.P.R. 251 (1990); Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702 (1990).

Al referirnos a la omisión, hemos señalado que ésta genera responsabilidad civil por negligencia si tal conducta constituye el quebrantamiento de un deber de cuidado impuesto o reconocido por ley y si de haberse realizado el acto omitido se hubiera evitado el daño. Tormos Arroyo v. D.I.P., supra; Arroyo López v. E.L.A., 126 D.P.R. 682, (1990); Soc. Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94 (1986). Según señalamos en Arroyo López v. E.L.A., supra, "ante una reclamación fundada en responsabilidad por omisión, la pregunta de umbral es si existía un deber jurídico de actuar de parte del alegado causante del daño."

En el caso ante nos, los peticionarios alegan que la Autoridad de Energía Eléctrica es civilmente responsable de las cuatro muertes por electrocución acaecidas en el río Maragüez como resultado del postre caído, cuyo cable energizado se encontraba en contacto con las aguas del río. Según los peticionarios, una vez el foro de instancia determinó que podía deducirse "que si los empleados de la Autoridad [de Energía Eléctrica] hubiesen llegado hasta Las Piedras Construction probablemente hubiesen visto el poste y hubiesen resuelto el problema del cable energizado", procedía determinar que la recurrida incurrió en negligencia por omisión al no desplegar una conducta adecuada en respuesta a las llamadas que informaron los problemas del poste caído y los cambios en voltaje en ese lugar. Aducen los peticionarios que la responsabilidad de la recurrida se debe al incumplimiento, por omisión, con sus deberes de inspección y reparación de averías informadas por un consumidor. Tratándose de la alegada responsabilidad de la Autoridad de Energía Eléctrica por omisión, y conforme a nuestros pronunciamientos en Arroyo López v. E.L.A., supra, debemos analizar, en

primer lugar, si en este caso existía un deber de cuidado de parte de la recurrida impuesto o reconocido por ley y si, de haberlo, tal deber fue quebrantado por ella.

III

En reiteradas ocasiones hemos reconocido el carácter inherentemente peligroso de la energía eléctrica y el deber de cuidado que tienen las personas o empresas encargadas de su distribución, en este caso la Autoridad de Energía Eléctrica, de velar y mantener sus instalaciones de alto voltaje. Torres Solís et al. v. A.E.E. et als., Opinión de 7 de junio de 1994, 136 D.P.R. __, 94 JTS 89; Vda. de Dávila v. Fuentes Fluviales, 90 D.P.R. 321 (1964); Ramos v. Aut. Fuentes Fluviales, 86 D.P.R. 603 (1962). Este deber de cuidado no se limita a la instalación, mantenimiento y operación de sus plantas generadoras de electricidad y las líneas que la conducen sino que incluye también la obligación de realizar inspecciones adecuadas "para descubrir defectos y situaciones de peligro o riesgo para el público." Ramos v. Aut. Fuentes Fluviales, supra, a la pág. 609. No obstante, también hemos indicado que el deber de cuidado de las distribuidoras de energía eléctrica para con sus instalaciones no las convierte en aseguradoras absolutas de todo accidente o peligro imaginable. Torres Solís et al. v. A.E.E. et als., supra; Pacheco v. A.F.F., supra; Burgos Quiñones v. Autoridad de Fuentes Fluviales, 90 D.P.R. 613 (1964); Ramos v. Aut. Fuentes Fluviales, supra; Matos v. P. R. Ry., Lt. & P. Co., 58 D.P.R. 161 (1941). Su "obligación consiste en tomar aquellas precauciones que aseguren contra las probabilidades de riesgos y peligros". Ramos v. Aut. Fuentes Fluviales, supra. Ello significa que sólo serán responsables de los daños que se hayan "producido por su culpa o negligencia al no usar un grado de cuidado o diligencia en proporción al peligro que el uso de la [energía eléctrica] conlleva." Matos v. P. R. Ry., Lt. & P. Co., supra, a la pág. 164 (1941). Es evidente, pues, que la Autoridad de Energía Eléctrica tiene el deber de mantener sus

líneas eléctricas en condiciones tales que no representen un peligro para el público.

Una vez resuelto que en este caso existía un deber de cuidado de parte de la Autoridad de Energía Eléctrica, nos resta determinar si la recurrida incumplió con dicho deber. Veamos.

IV

Es menester que analicemos aquí detenidamente la forma en que la Autoridad de Energía Eléctrica atendió las repetidas llamadas relacionadas al poste caído y a los problemas de bajo voltaje, recibidas tanto de un empleado de las Piedras Construction como de otros en el área de la represa Cerrillos. Según se relató antes, el tribunal de instancia encontró probado que el 21 de junio de 1991, a eso de las 7:35 a.m. se le informó a la Autoridad de Energía Eléctrica en una primera llamada el problema del bajo voltaje que se estaba experimentando en el área de la represa Cerrillos ubicada en el Km. 6 de la carretera núm. 139 del barrio Maragüez de Ponce. Respondiendo a esta llamada, la recurrida envió una brigada al área referida para investigar el asunto del bajo voltaje.

Mientras la brigada aludida llevaba a cabo la inspección antes mencionada, la recurrida le notificó que en el sector Los Fondos del barrio Maragüez había un problema de un poste caído que la brigada también debía atender. Esta notificación fue producto de la primera llamada realizada por León Rosario, es decir, la llamada efectuada a las 8:30 a.m. por el empleado de Las Piedras Construction. Como no tenía la localización exacta del lugar donde estaba ubicado el poste caído, el despachador de la Autoridad de Energía Eléctrica indicó a la brigada que tuviera como referencia las oficinas de la Autoridad de Carreteras. No obstante, el despachador no informó a la brigada sobre el problema de bajo voltaje reportado por el empleado de Las Piedras Construction. Tampoco le indicó que debían llegar hasta dicha compañía para que allí les dieran más detalles de los dos problemas informados.

Evidentemente, el despachador de llamadas de la recurrida, al actuar sobre la primera llamada de León Rosario, **omitió proporcionar a la brigada información importante y necesaria para que ésta pudiera realizar su labor adecuadamente**. Según encontró probado el tribunal de instancia, la brigada acudió a las oficinas de la Autoridad de Carreteras referida, donde preguntaron por la ubicación de un poste caído. Allí le indicaron sobre unos pedazos de un poste que estaban tirados en la carretera núm. 139. Una vez los encontraron, la brigada movió los pedazos del poste hacia la orilla del pavimento e informó sobre ello al despachador. Nótese que la brigada realizó estrictamente aquello que le había sido encomendado: una vez encontró pedazos de un poste, los movió hacia un lugar no peligroso y llamó a las oficinas de la recurrida para que los recogieran; esta llamada se realizó a las 10:00 a.m. de ese día. Indudablemente, si ya había cumplido la orden recibida, procedía que la brigada se retirara del lugar, cosa que hizo. No obstante, parece claro que si la brigada hubiese sido informada por el despachador de la recurrida sobre el problema de bajo voltaje en las oficinas de Las Piedras Construction, y se le hubiese indicado además que debía acudir a las oficinas de Las Piedras Construction para indagar allí más a fondo sobre los problemas informados a la recurrida, el resultado de las gestiones de la brigada probablemente hubiese sido otro. En ese caso, y según determinó el tribunal de instancia, es probable que la brigada hubiese localizado el poste caído informado por León Rosario y así hubiese resuelto el problema de bajo voltaje en el área. Ello, evidentemente, hubiera evitado las cuatro muertes por electrocución ocurridas dos días después.

Lo señalado en el párrafo anterior no fue la única irregularidad en el procesamiento por la Autoridad de Energía Eléctrica de las llamadas realizadas por León Rosario. Hubo otra aun más grave que la anterior. Surge de las determinaciones de instancia **que la recurrida no atendió de ningún modo adecuado la segunda llamada que le hizo León Rosario a las 11:30 a.m. del viernes en cuestión, para volver a**

**informar lo que le había comunicado horas antes**. El funcionario de la recurrida que atendió la segunda llamada del empleado de Las Piedras Construction ni siquiera la anotó. Tampoco le informó a la brigada que el problema de bajo voltaje y el del poste caído aún no había sido resuelto. Al momento en que León Rosario hizo su segunda llamada, ya hacía alrededor de hora y media desde que la brigada había informado a la recurrida que había movido los pedazos de un poste caído. Como en su segunda llamada León Rosario había informado que el poste caído se encontraba aún tirado en el mismo lugar en que estaba cuando llamó a la recurrida inicialmente, era obvio que se trataba de un poste distinto al atendido por la brigada. En tales circunstancias, el funcionario de la recurrida debió notificar a la brigada que continuaba tirado en el carretera núm. 139 un poste caído, y que continuaba en el área el problema del bajo voltaje, con instrucciones para que la brigada continuase su investigación. Nada de eso hizo la recurrida.

En resumen, pues, ninguna de las dos llamadas de alerta de León Rosario fue adecuadamente atendida por la recurrida, particularmente la segunda. Hubo aquí evidentemente un manejo negligente por parte de la recurrida de las llamadas mediante las cuales se le alertó de averías en el sistema eléctrico del área en cuestión. En la Autoridad de Energía Eléctrica no se le dio a estas llamadas la atención esmerada y cuidadosa que merecían siendo éste un asunto potencialmente muy grave, el cual no podía tratarse de manera rutinaria.

Debe notarse que la investigación realizada el viernes por la brigada en el área de la represa Cerrillos, respondiendo a la primera llamada que recibió la recurrida a las 7:35 a.m. respecto al problema de bajo voltaje en ese lugar, fue amplia y minuciosa, aunque no fue exitosa. Lo mismo sucedió el día siguiente, cuando mediante otras llamadas ese día, se volvió a investigar el problema de bajo voltaje en el área de la represa. Por desgracia, las llamadas de León Rosario no ocasionaron la labor meticulosa de la brigada que probablemente hubiese dado lugar a descubrir el cable eléctrico energizado que provocó las

cuatro (4) muertes que aquí nos conciernen. La brigada no realizó la labor meticulosa que podía realizar, **como las que llevó a cabo en el área de la represa**, porque la Autoridad de Energía Eléctrica no le dio las instrucciones necesarias para ello, debido a las omisiones discutidas antes por parte de la recurrida en el manejo de las llamadas de alerta que recibió de León Rosario.

Es evidente, pues, que la Autoridad de Energía Eléctrica no fue diligente como pudo haber sido en su deber de realizar las inspecciones adecuadas que pudiesen llevarle a descubrir los defectos y situaciones peligrosas para el público a las que nos referimos en Ramos v. Aut. de Fuentes Fluviales, supra. El gravísimo riesgo que representa un poste caído, con sus líneas eléctricas energizadas, requiere una atención de la más elevada diligencia de parte de la recurrida, cosa que no ocurrió aquí. Entidades como la recurrida deben ejercer el mayor grado de cuidado y precaución cuando se trata de asuntos de tanta peligrosidad al público como lo es el de líneas eléctrica energizadas rodando por el suelo. En esta situación el estándar de cuidado exigible, si bien no es absoluto, es más riguroso que el ordinario, en proporción al grave peligro que la situación aludida conlleva. Pacheco v. A.F.F., supra; Concepción Guzmán v. A.F.F., 92 D.P.R. 488 (1965); Vda. de Dávila v. Fuentes Fluviales, supra; Ramos v. Aut. Fuentes Fluviales, supra; Matos v. P.R. Ry., Lt. & P. Co., supra. Forzoso es concluir que la recurrida fue negligente al incumplir su deber de cuidado hacia el público.

Sin embargo, lo anterior no resuelve en su totalidad la controversia planteada ante nos. Debemos, además, determinar si procede imponer responsabilidad a la recurrida por haber incumplido su deber legal de mantener sus instalaciones y equipo en condiciones que no presenten riesgos para el público aun cuando la condición peligrosa del caso de autos surgió de inmediato como resultado de un acto delictivo de terceros.

V

Conforme a nuestros pronunciamientos previos, la recurrida responde civilmente por sus omisiones en el cumplimiento de su deber de cuidado con el público respecto a sus facilidades e instalaciones de energía eléctrica. Ahora bien, no se trata aquí del deber de hacer inspecciones y reparaciones rutinarias de la Autoridad de Energía Eléctrica sino de la caída de uno de sus postes de tendido eléctrico de alta tensión por alegados actos delictivos de terceros.

Anteriormente hemos tenido la ocasión de expresarnos en torno a asuntos análogos al del caso de autos, en los cuales la controversia trataba sobre la responsabilidad de un individuo como resultado de actos delictivos de terceros. Al tratar dicho tema en un contexto análogo al del caso de autos hemos señalado que:

> se puede colegir que la difícil determinación de cuándo existe un nexo causal entre el daño producido por un acto delictivo de un tercero y la omisión de cumplir con la obligación de tomar precauciones, medidas de seguridad y protección, no puede "resolverse nunca de una manera plenamente satisfactoria mediante reglas abstractas, sino que en los casos de duda ha de resolverse por el juez según su libre convicción, ponderando todas las circunstancias." Elba A.B.M. v. U.P.R., supra, citando a J. Castán Tobeñas, Derecho Civil español, común y foral, 10ma ed., Madrid, Ed. Reus, 1967, T. 3, a la pág. 195.

Así, en Cruz Costales v. E.L.A., 89 D.P.R. 105 (1963), determinamos que incurrió en responsabilidad el Estado por los daños sufridos por un estudiante en una escuela como resultado de una agresión por una persona ajena al plantel en momentos en que el maestro se ausentó del salón de clases. Concluimos allí que el daño sufrido por el estudiante fue producto de la ausencia inexplicada del maestro de su salón de clases, ausencia que se convirtió en la causa legal del daño. Posteriormente, en Pabón Escabí v. Axtmayer, 90 D.P.R. 20 (1964), resolvimos que una hospedería responde por los daños previsibles sufridos por un huésped asaltado en un hotel por la negligencia de aquella al no proveer medidas de protección apropiadas. De igual forma, en Elba A.B.M. v. U.P.R., supra, resolvimos que incurrió en responsabilidad una institución educativa que, con pleno conocimiento de los actos delictivos que ocurrían en sus predios, no tomó medidas de

seguridad adecuadas para proteger la vida de los estudiantes. Resolvimos allí que el daño sufrido por una estudiante que fue atacada y violada en la institución fue el producto de la inercia de la institución al quebrantar su deber de actuar, lo que constituyó conducta negligente al amparo del Art. 1802, _supra_. Recientemente, en _J.A.D.M. v. Centro Com. Plaza Carolina_, _supra_, responsabilizamos a un centro comercial por los daños ocasionados a una joven por aquel quebrantar su deber de velar por la seguridad del público que acudía a sus facilidades al no tomar medidas de vigilancia adecuadas para evitar actos delictivos previsibles. Igualmente, en _Tormos Arroyo v. D.I.P._, _supra_, responsabilizamos al Estado (Departamento de Educación) por la golpiza que unas personas ajenas a una escuela pública le propinaron a un estudiante de ésta en un lugar cerca de la escuela. Resolvimos allí que aunque la golpiza la propinó un intruso fuera de la escuela, el acto ilícito de éste se habría evitado si el Estado hubiese cumplido con su deber de vigilancia y protección a la seguridad de los estudiantes. La omisión de la diligencia exigible por parte del Estado –determinamos allí– fue la causa legal del daño.

En resumen, pues, en nuestra jurisprudencia hemos seguido una clara trayectoria en diversas situaciones de imponer responsabilidad a una entidad por actos delictivos de terceros, cuando ésta a su vez no cumplió con su deber de tomar medidas de precaución razonables, que hubieran evitado la ocurrencia de un daño previsible.

En el caso ante nos, se trata de cuatro muertes por electrocución producto del contacto de un cable de alta tensión con las aguas de un río en el cual los infortunados disfrutaban de un momento de esparcimiento. Si bien es cierto que la Autoridad de Energía Eléctrica no fue la responsable de la caída del poste que sostenía el cable energizado que, eventualmente, provocó las muertes, no podemos pasar por alto la conducta negligente de la recurrida al no atender adecuadamente las llamadas de alerta del público, respecto a averías en sus servicios directamente relacionados con las cuatro (4) muertes en

cuestión. Como vimos anteriormente, tal omisión de la diligencia exigible dio lugar a que el poste caído no pudiera ser localizado por la brigada de la recurrida, antes de que ocurriese el daño previsible que resultó de esa omisión. Erró, pues, el tribunal de apelaciones al confirmar la determinación del foro de instancia que exoneró de toda responsabilidad a la Autoridad de Energía Eléctrica por las muertes referidas.

## VI

Por los fundamentos anteriores, procede dejar sin efecto los dictámenes del Tribunal de Circuito de Apelaciones y del Tribunal de Primera Instancia, mediante los cuales se exoneró de toda responsabilidad a la Autoridad de Energía Eléctrica por las muertes en el caso de autos. Debe devolverse el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


```
                                   *
Las Sucns. de Francisco Vega       *         Certiorari
Marrero, Mariana Rodríguez Santana *
y Otros                            *
                                   *          CC-1998-307
        Apelantes                  *
                                   *
            vs.                    *
                                   *
Autoridad de Energía Eléctrica,    *
Las Compañías Aseguradoras y Otros *
                                   *
        Apelados                   *
                                   *
_____*
                                   *
José Velázquez Hernández y         *
María Esther Blanco, Etc.          *
                                   *
        Apelantes                  *
                                   *
            vs.                    *
                                   *
Estado Libre Asociado de Puerto Rico, *
Autoridad de Energía Eléctrica y Otros *
                                   *
        Apelados                   *
                                   *                        *
* * * * * * * * * * * * * * * * * * * *
```

SENTENCIA


San Juan, Puerto Rico a 21 de septiembre de 1999.


En el caso de autos cuatro (4) personas murieron electrocutadas mientras se encontraban bañándose en el Río Maragüez de Ponce, Puerto Rico. El desgraciado accidente ocurrió debido a que un poste de la Autoridad de Energía Eléctrica con tendido eléctrico había sido derribado y los cables energizados de éste cayeron al Río Maragüez, todo ello antes de que las cuatro (4) personas fallecidas hubiesen

entrado a las aguas del río. El poste fue derrumbado por unos individuos interesados aparentemente en remover el transformador de electricidad que tenía el poste y apropiarse de él.

Dos días antes de que ocurriesen las muertes, la Autoridad de Energía Eléctrica había recibido varias llamadas telefónicas mediante las cuales se le informó de un problema de bajo voltaje y de un poste caído en el área. La Autoridad de Energía Eléctrica investigó adecuadamente algunas de estas llamadas pero otras no. Como consecuencia de no haber atendido responsablemente algunas de las llamadas aludidas, la Autoridad de Energía Eléctrica no detectó el cable energizado que se encontraba en contacto con las aguas del Río Maragüez hasta después que ocurrió el lamentable accidente en el cual fallecieron las cuatro (4) personas referidas.

Los familiares de las cuatro (4) personas que murieron electrocutadas instaron demandas de daños y perjuicios. En lo pertinente, alegaron que si la Autoridad de Energía Eléctrica hubiese investigado debidamente todas las llamadas de alerta que recibió sobre el poste caído y las variaciones del voltaje en el área, se hubiese percatado de la presencia del cable energizado en el río y su hubiesen evitado las cuatro (4) muertes por electrocución. El foro de instancia, luego de apreciar la prueba presentada, emitió sentencia parcial mediante la cual declaró sin lugar las demandas contra la Autoridad de Energía Eléctrica. Determinó que la actuación de la Autoridad había sido razonable dentro de las circunstancias, y que la causa directa de la electrocución de las cuatro (4) personas fue la acción culposa de los que cortaron el poste.

El Tribunal de Circuito de Apelaciones confirmó la determinación del Tribunal de instancia.

Los demandantes acudieron ante nos y expedimos el recurso.

Examinados los hechos cuidadosamente a la luz de las conocidas normas que aplican en casos como los de autos, resolvemos que erraron los foros de instancia y apelación al exonerar de toda responsabilidad

a la Autoridad de Energía Eléctrica por las muertes referidas. La Autoridad de Energía Eléctrica fue negligente al no investigar debidamente todas las llamadas de alerta que recibió, mencionadas antes. Por ello se dejan sin efecto el dictamen del Tribunal de Circuito de Apelaciones del 13 de marzo de 1998 y el del Tribunal de Primera Instancia, Sala Superior de Ponce, del 7 de junio de 1996, en el caso de epígrafe. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió opinión de conformidad a la cual se une el Juez Presidente señor Andréu García. El Juez Asociado señor Negrón García concurre sin opinión escrita.

Los Jueces Asociados señores Rebollo López y Corrada del Río disienten sin opinión escrita.


                         Isabel Llompart Zeno
                    Secretaria del Tribunal Supremo