Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| IRMA DE JESÚS FIGUEROA, ET ALS. **APELANTES** v DR. EDUARDO NIEVES OLABARRIETA **APELADO** | KLAN202400928 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo Caso Núm. RG2024CV00066 Sobre: Daños y Perjuicios |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rodríguez Flores y el Juez Candelaria Rosa[1]

Sánchez Ramos, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

El Tribunal de Primera Instancia ("TPI") desestimó, por prescripción, una reclamación de daños y perjuicios contra un médico. Según se explica a continuación, concluimos que erró el TPI, pues (i) la prescripción fue interrumpida a través de una reclamación extrajudicial entregada personalmente en la oficina del médico y, (ii) en cualquier caso, una anterior reclamación judicial contra el hospital surtió efecto interruptor en cuanto al médico, porque el paciente acudió al hospital en busca de atención médica, y el médico intervino sin elección previa del paciente, lo cual establece una relación solidaria propia entre el hospital y el médico.

I.

El 19 de julio de 2019, la Sa. Irma De Jesús y otros (los "Demandantes") presentaron una Demanda (la "Primera Demanda", FA2019CV00863) en contra del Hospital HIMA San Pablo (el "Hospital") y varios doctores, incluido el Dr. Eduardo Nieves Olabarrieta (el "Médico").

---

[1] Conforme a la Orden Administrativa OATA-2024-145, el Juez Candelaria Rosa sustituyó al Juez Pagán Ocasio.

Se alegó en la Primera Demanda que, el 23 de julio de 2018, el Sr. Manuel De Jesús (el "Paciente") llegó a la sala de emergencias del Hospital debido a que tenía un absceso en el área sacral. Ese día el Paciente fue admitido por el Hospital para atención médica. El Paciente tuvo complicaciones que culminaron con su muerte una semana luego (30 de julio de 2018). En vista de ello, se alegó que hubo negligencia en el diagnóstico y tratamiento del Paciente por el personal médico del Hospital.

El 24 de marzo de 2020, el TPI notificó una Sentencia mediante la cual desestimó la Primera Demanda, sin perjuicio, por falta de emplazamiento oportuno de varios codemandados, incluido el Médico.[2] Sin embargo, luego de varias sentencias parciales, **el trámite de la Primera Demanda continuó contra el Hospital**. El 18 de agosto de 2023, el TPI, mediante *Resolución de Paralización*, decretó la paralización de los procedimientos del caso, ello a raíz de que el Hospital había presentado una petición de quiebra ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.[3]

Mientras tanto, el 20 de febrero de 2024, los Demandantes presentaron la demanda de epígrafe (la "Demanda"), la cual se dirigió únicamente en contra del Médico, ello en conexión con los mismos hechos relatados en la Primera Demanda. Se alegó que, el 23 de marzo de 2021, notificaron personalmente al Médico una carta de interrupción de prescripción extrajudicial (la "Primera Carta"); el 11 de marzo de 2022, notificaron personalmente al Médico una segunda carta de interrupción de prescripción extrajudicial (la "Segunda Carta"); y el 22 de febrero de 2023, notificaron personalmente al Médico una tercera carta de interrupción de

---

[2] *Íd.*, págs. 64-66.
[3] Tomamos conocimiento judicial de la *Resolución de Paralización*, emitida el 18 de agosto de 2023. Véase, expediente electrónico del caso FA2019CV00863 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 195.

prescripción extrajudicial (la "Tercera Carta"; junto a la Primera Carta y la Segunda Carta, las "Cartas"). Por lo tanto, afirmaron que la Demanda se presentó oportunamente.[4] En cuanto al Médico, se alegó los siguiente:

> 30. Dr. Nieves Olabarrieta deviated from the applicable standard of care in the following ways:
>
> A. Failure to identify that Manuel had concern for GI bleeding when he was noted to have "port wine stool" identified on July 26th, 2018.
>
> B. Failure to conduct a proper history and physical each day after the abnormal stool was identified to note the presence or absence of signs or symptoms concerning for acute GI bleeding.
>
> C. Failure to obtain adequate repeat lab tests to trend Hemoglobin and Platelet count.
>
> D. Failure to list anemia and thrombocytopenia in the problem list on subsequent days and provide a differential diagnosis which included acute hemorrhagic anemia and create a treatment plan.
>
> E. Failure to consult a gastroenterologist who could have provided definitive intervention for acute GI bleeding.
>
> 31. The abovementioned omissions were in violation of the standard of care and are directly related to the death of Manuel. 32. As a result of his negligent acts, Dr. Nieves, is directly and vicariously liable for the emotional damage and distress suffered by Plaintiffs.[5]

El 3 de mayo de 2024, el Médico presentó una *Solicitud de Desestimación por Prescripción* (la "Moción").[6] Sostuvo que la reclamación en su contra estaba prescrita, toda vez que no recibió personalmente la Primera Carta. Acompañó dicha Moción con una Declaración Jurada suya en la cual indicó que, durante el año 2021, no recibió personalmente ninguna carta de los Demandantes.

El 22 de julio, los Demandantes se opusieron a la Moción.[7] Arguyeron que el término prescriptivo fue interrumpido contra el

---

[4] Apéndice del recurso, pág. 3.
[5] *Íd.*, pág. 4.
[6] *Íd.*, págs. 6-14.
[7] *Íd.*, págs. 35-47.

Médico mediante la presentación de la Primera Demanda y las Cartas. En la alternativa, plantearon que la interrupción del término en cuanto al Hospital, a raíz de la Primera Demanda, interrumpió el término en cuanto al Médico, pues entre estas partes existía una relación de solidaridad perfecta.

El Médico replicó.[8] Sostuvo que la Primera Carta no interrumpió el término prescriptivo porque no le fue entregada personalmente, ni la recibió; y que la solidaridad entre las partes es una imperfecta, conforme a lo resuelto en *Fraguada v. Hosp. Auxilio Mutuo, infra.* Anejó a su moción una segunda Declaración Jurada, en la cual aseguró que durante el año 2021 asistía a su oficina médica ubicada en Río Grande, una vez por semana, todos los miércoles; que el 23 de marzo de 2021, no visitó esa oficina; que la primera reclamación extrajudicial que recibió de los Demandantes fue el 11 de marzo de 2022; y que, en el año 2021, su relación con el Hospital no era de patrono-empleado, sino que únicamente gozaba de privilegios en dicha institución.

El 6 de agosto, se celebró una vista, en torno a la Moción. Según la correspondiente Minuta, las partes estipularon que la Primera Carta sí fue entregada el 23 de marzo de 2021 a una empleada en la oficina del Médico.[9] El TPI recibió también el testimonio de un emplazador y del Médico.

El 13 de agosto, los Demandantes presentaron una dúplica; arguyeron que, independientemente que el Médico no fuese empleado del Hospital, la norma es que los hospitales responden vicaria y solidariamente por las actuaciones negligentes de los médicos que atienden a un paciente que acude a una institución hospitalaria.[10]

---

[8] *Íd.*, págs. 75-93.
[9] *Íd.*, págs. 106-107 (Minuta).
[10] *Íd.*, págs. 95-102.

Mediante una *Sentencia* notificada el 27 de agosto de 2024 (la "Sentencia"), el TPI desestimó con perjuicio la reclamación contra el Médico, al concluir que la misma estaba prescrita. Como cuestión de hecho, el TPI determinó que, el 23 de marzo de 2021, la Primera Carta fue "entregada personalmente a la Sa. Evelyn Ramos, secretaria del [Médico] … en la oficina de [este] …". No obstante, el TPI estimó que la Primera Carta no interrumpió el término prescriptivo pertinente porque la misma "no llegó a su destino, siendo este la persona del demandado".

Por otra parte, el TPI razonó que la interrupción del término prescriptivo en cuanto al Hospital no aprovechó por igual al Médico, pues entre las partes no existe una relación de solidaridad perfecta.

El 11 de septiembre, los Demandantes presentaron una *Moción de Reconsideración* de la Sentencia, la cual fue denegada mediante una *Orden* notificada el 16 de septiembre.

Inconformes, el 16 de octubre, los Demandantes instaron el recurso que nos ocupa; formulan los siguientes señalamientos de error:

1. Erró el TPI al concluir que la Primera Carta notificada mediante entregada [sic.] a la mano a la secretaria del Dr. Nieves, en las inmediaciones de su oficina médica, no tuvo el efecto de interrumpir el término prescriptivo.

2. Erró el TPI al concluir que no existe solidaridad perfecta entre el Dr. Nieves y el Hospital HIMA.

3. Erró el TPI al concluir que la presentación del Primera Caso en contra del Hospital HIMA no tuvo el efecto de interrumpir y congelar la prescripción en cuanto al Dr. Nieves.

A finales de noviembre, el Médico presentó su alegato en oposición; planteó que "el hecho de que la reclamación no haya sido entregada personalmente [a él], ni … haya tenido conocimiento de la misma, resulta determinante". Por su parte, planteó que, como no había relación "obrero-patronal" entre el Hospital y él, la

interrupción de la prescripción en cuanto al Hospital no surtía efecto en cuanto a él. Resolvemos.

## II.

Los actos y omisiones en que intervenga cualquier género de culpa o negligencia generan responsabilidad civil extracontractual. 31 LPRA ant. sec. 2992.[11] Por ello, el Artículo 1802 del Código civil de Puerto Rico de 1930 establece que, "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado [...]". 31 LPRA ant. sec. 5141.

La imposición de responsabilidad civil al amparo de esta norma requiere que concurran tres elementos, a saber: (1) la ocurrencia de un daño físico u emocional sufrido por el demandante; (2) que dicho daño hubiera surgido como resultado de un acto u omisión culposa o negligente del demandado y (3) la existencia de un nexo causal entre el daño sufrido y dicho acto u omisión. *Nieves Díaz v. González Massas,* 178 DPR 820, 843 (2010); *López v. Porrata Doria,* 169 DPR 135, 150 (2006). Las acciones por responsabilidad civil extracontractual "se distinguen porque la responsabilidad frente al perjudicado surge sin que le preceda una relación jurídica entre las partes". *Maderas Tratadas v. Sun Alliance,* 185 DPR 880, 908 (2012).

Así pues, la culpa o la negligencia consiste en la falta de cuidado al no anticipar o prever las consecuencias de un acto, tal y como lo haría una persona prudente y razonable en iguales circunstancias. *Nieves Díaz,* 178 DPR a la pág. 844; *Sucns. Vega Marrero v. AEE,* 149 DPR 159, 169–170 (1999); *Montalvo v. Cruz,* 144 DPR 748, 755–756 (1998). Siendo ello así, la norma exige que se actúe con el grado de cuidado, diligencia, vigilancia y precaución

---

[11] Los hechos que originaron la reclamación de autos surgieron previo a la vigencia del nuevo Código civil de Puerto Rico, Ley Núm. 55-2020. Por tanto, haremos referencia a las disposiciones del derogado Código civil.

que las particularidades del asunto de que trate exijan. *Monllor v. Soc. de Gananciales,* 138 DPR 600, 604 (1995).

En *Rodríguez et al. v. Hospital et al.,* 186 DPR 889, 900 (2016), se reiteró y recalcó que una acción para exigir responsabilidad profesional a un médico no es distinta a la de un caso ordinario de daños y perjuicios por negligencia al amparo del Artículo 1802 del Código civil, *supra.* Véase, además, *Martínez Marrero v. González Droz,* 180 DPR 579 (2011). Por lo tanto, al igual que cualquier otra causa de acción por daños y perjuicios, la reclamación por impericia médica requiere que la parte demandante establezca por preponderancia de la evidencia, creída por el juzgador, que los actos de negligencia, falta de cuidado o impericia del médico causaron el daño reclamado. *Íd.*

Durante las últimas décadas, se han establecido distintas bases para imponerle responsabilidad a los hospitales por los daños que puedan sufrir los pacientes. *Fonseca v. HIMA,* 184 DPR 281 (2012); *Sagardía de Jesús v. Hosp. Aux. Mutuo,* 177 DPR 484 (2009); *Blás v. Hosp. Guadalupe,* 146 DPR 267 (1998); *Márquez Vega v. Martínez Rosado,* 116 DPR 397, 404–405 (1985); *Núñez v. Cintrón,* 115 DPR 598 (1984); *Hernández v. La Capital,* 81 DPR 1031, 1038 (1960). Lo anterior se sustenta al amparo de la doctrina de responsabilidad vicaria, recogida en el Artículo 1803 del Código civil, 31 LPRA ant. sec. 5142.

Así pues, los hospitales generalmente responden por los actos de los médicos que ofrecen sus servicios en sus facilidades, particularmente cuando el paciente acude al hospital sin tener una relación previa con el médico. Los hospitales siempre responden vicariamente por los médicos que son sus empleados. También responden, de ordinario, por los actos negligentes de los médicos que, aunque no son sus empleados, son parte de su facultad (staff) y están disponibles para consultas de otros médicos. *Márquez Vega,*

116 DPR a la pág. 407; *Núñez,* 115 DPR a la pág. 606. Incluso, los hospitales ordinariamente responden también por los concesionarios de franquicias exclusivas para prestar servicios en el hospital cuando cometen actos de impericia médica. *Sagardía de Jesús,* 177 DPR a las págs. 515-516. Son ejemplos de estos concesionarios los anestesiólogos, radiólogos y proveedores de servicios de sala de emergencia. *Íd.* Respecto a estos, el hospital es responsable por haber seleccionado a ese personal y tenerlo ofreciendo servicios a los pacientes. *Íd.*

Según adelantado, en lo referente a los médicos que no son empleados del hospital, pero gozan del privilegio de usar las instalaciones del hospital para recluir a sus pacientes privados, el hospital responderá por los actos de dichos médicos en las siguientes circunstancias. **El hospital responde si le asignó el paciente al médico, lo cual típicamente ocurre cuando el paciente acudió directamente al hospital en búsqueda de ayuda médica y este le proveyó al paciente los facultativos médicos que lo atendieron**. *Sagardía de Jesús, supra*; *Márquez Vega, supra.* En ese caso, el hospital responde vicaria y solidariamente con el médico responsable del acto de impericia, sin importar si este último es (o no) un empleado del hospital, o uno a quien el hospital le haya concedido una franquicia para brindar servicios médicos especializados a los pacientes de este, o uno que es miembro de la facultad (staff) del hospital y a quien este llama en consulta para atender al paciente. *Íd.*

Por otra parte, el hospital ordinariamente no responderá vicariamente por los actos del médico si este no es su empleado **y** si se trata de un paciente privado de dicho médico que acude al hospital en virtud de la relación previa entre el paciente y dicho médico. *Sagardía de Jesús,* 177 DPR a la pág. 513; *Márquez Vega,* 116 DPR a las págs. 402–405.

La anterior distinción responde a que, cuando el paciente acude al hospital, es dicha institución la que selecciona qué médico le atenderá, no teniendo el paciente ninguna participación al respecto. Por tanto, en esas circunstancias, el hospital debe responder vicariamente por los actos del médico. Es decir, cuando el paciente visita el hospital en búsqueda de asistencia, existe una garantía implícita de que los médicos seleccionados son competentes y capacitados para asistir adecuadamente al paciente. Más aún, desde el punto de vista del paciente, quien lo atiende es el hospital, y no médicos distintos e independientes los unos de los otros y, en esta situación, es con el hospital con quien el paciente tiene una relación contractual. En otras palabras, para fines del paciente, el hospital se proyecta como una comunidad que ofrece servicios de salud en conjunto. *Márquez Vega,* 116 DPR a las págs. 407-408. (Citas omitidas).

III.

"La prescripción extintiva es una institución de derecho sustantivo que extingue el derecho a ejercer determinada causa de acción". *Maldonado Rivera v. Suarez y otros,* 195 DPR 182, 192 (2016). En otras palabras, la prescripción extintiva es materia de naturaleza sustantiva, regida por nuestro Código civil. *SLG García–Villega v. ELA et al,* 190 DPR 799, 812 (2014); *Fraguada Bonilla v. Hosp. Aux. Mutuo,* 186 DPR 365 (2012); 31 LPRA ant. sec. 5291.

La prescripción extintiva "tiene como propósito castigar la inercia y estimular el ejercicio rápido de las acciones, puesto que no se debe exponer a las personas toda la vida, o por un largo tiempo, a ser demandadas". *SLG Haedo-López v. SLG Roldán-Rodríguez,* 203 DPR 324, 336-337 (2019) (Citas omitidas). Véase, además, *COSSEC et al. v. González López et al.,* 179 DPR 793, 806 (2010). "Al respecto, transcurrido el periodo de tiempo establecido por ley sin reclamo

alguno por parte del titular del derecho, se origina una presunción legal de abandono". *Fraguada Bonilla,*186 DPR a la pág. 374.

El término prescriptivo para presentar una reclamación, incluidas las reclamaciones por impericia profesional médica, al amparo del Artículo 1802 del Código civil, *supra,* es de un año desde que el agraviado supo, o debió saber con razonable diligencia, del daño. Art. 1868 del Código civil, 31 LPRA ant. sec. 5298; *SLG Serrano-Báez v. Foot Locker,* 182 DPR 824, 832 (2011).

Así mismo, el término prescriptivo, cuando no exista disposición especial que indique alguna otra cosa, comenzará a transcurrir desde el día en que pudo ejercitarse la misma. Art. 1869 del Código civil, 31 LPRA ant. sec. 5299. Para que comience a transcurrir el término, es necesario que la persona perjudicada conozca del daño sufrido, quién se lo ha causado y los elementos necesarios para poder ejercitar efectivamente su causa de acción. *Fraguada Bonilla,* 186 DPR a la pág. 374. (Citas omitidas).

Ahora bien, "si el desconocimiento [de los elementos de la causa de acción] se debe a falta de diligencia, entonces no son aplicables estas consideraciones sobre la prescripción". *Íd.*; *COSSEC et al., supra.* A estos efectos, se le exige a la parte afectada la diligencia de una persona prudente y razonable, de manera que descubra los elementos necesarios para su causa de acción en un tiempo razonable para, así, cumplir con los propósitos de la prescripción. Véase, *Vera v. Dr. Bravo,* 161 DPR 308, 330 (2004). Comenzado a transcurrir el término, el Artículo 1873 del Código civil establece que "[l]a prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor". 31 LPRA ant. sec. 5303.

Por otro lado, el Código civil establecía una presunción de mancomunidad en las obligaciones, salvo que se pactara

expresamente la solidaridad. 31 LPRA ant. sec. 3101. En cuanto a las obligaciones extracontractuales civiles que surgen de la culpa o negligencia, el Código civil no disponía si habría de regir la solidaridad o la mancomunidad. Ante esta laguna, anteriormente se estableció que, cuando exista pluralidad de co-causantes de un daño indivisible, estos responderán solidariamente ante el agraviado. *García v. Gobierno de la Capital,* 72 DPR 138 (1951).

No obstante, esta norma cambió posteriormente y, actualmente y de ordinario, en acciones de daños y perjuicios, cuando coincide más de un causante de un daño, el agraviado deberá interrumpir la prescripción en relación con cada co-causante por separado, dentro del término de un año establecido por el Artículo 1868 del Código civil, *supra,* si interesa conservar su causa de acción contra cada uno de ellos. Por ello, la presentación oportuna de la demanda contra un presunto co-causante ordinariamente no tiene el efecto de interrumpir el término prescriptivo contra el resto de los alegados co-causantes del daño. *Fraguada Bonilla, supra.* (Citas omitidas).

No obstante, recientemente se aclaró que, **en atención a la particular naturaleza de la relación entre quien responde vicariamente por los actos de otra persona, la reclamación por daños contra uno de ellos sí interrumpe en cuanto al otro**. *Pérez Hernández v. Lares Medical Center,* 207 DPR 965, 989-990 (2021).

En efecto, en el citado caso se resolvió, en lo aquí pertinente, que entre un patrono y su empleado existe una relación de solidaridad propia que se distingue de la solidaridad impropia que de ordinario existe entre los co-causantes de un daño extracontractual. En otras palabras, **cuando aplica la responsabilidad vicaria que se establece bajo el Artículo 1803 del Código civil,** *supra,* **no es de aplicación la solidaridad impropia establecida en *Fraguada Bonilla,* *supra,* y su progenie.**

IV.

Como cuestión de derecho, y de conformidad con los hechos estipulados por las partes y determinados por el TPI, la Demanda no está prescrita en cuanto al Médico. Aun partiendo de la premisa (errada, como veremos más adelante) de que la interrupción en cuanto al Hospital no afecta al Médico, la realidad es que el término fue interrumpido por los Demandantes, directamente en cuanto al Médico, a través de la Primera Demanda, la Primera Carta, la Segunda Carta y la Tercera Carta.

Contrario a lo que arguye el Médico, y razonó el TPI, la entrega personal en la oficina de un médico, a su secretaria, de una reclamación extrajudicial escrita tiene el efecto de interrumpir el término prescriptivo en cuanto a ese médico. Ello al igual que ocurriría si se demostrase que la carta fue enviada por correo certificado con acuse de recibo, y se demostrase que el recibo fue firmado por una empleada del médico. Sencillamente, la carta llegó a su destino. Si por razones "oficinescas" o de otra índole, la carta no se le entregase al médico, ello no afecta el hecho de que la carta fue debidamente entregada en su destino y de una forma razonablemente calculada para que llegase al conocimiento del médico. De lo contrario, se estaría fabricando una norma según la cual una reclamación extrajudicial solamente interrumpiría si se tramita con la formalidad de un emplazamiento personal. No existe autoridad para esta proposición.

Lo anterior, por sí solo, es suficiente para concluir que la Demanda no está prescrita y, por lo tanto, que procede la revocación de la Sentencia. Pero hay más. Aun si la Primera Carta no hubiese interrumpido el término prescriptivo, la presentación y continuada vigencia de la Primera Demanda tuvo el efecto de interrumpir el término en cuanto al Médico. Veamos.

El Paciente alega, y nadie ha controvertido, que acudió a la sala de emergencias del Hospital en busca de atención médica, y allí se le asignó al Médico para brindarle tratamiento en sus facilidades. No estamos ante una situación en que se alegue que el Paciente, debido a su relación previa con el Médico, fue hospitalizado por este como paciente privado.

Por tanto, y contrario a lo planteado por el Médico, no tiene pertinencia que este, supuestamente, no fuese empleado del Hospital.[12] La norma es que los hospitales son responsables por las actuaciones negligentes de los médicos que prestan servicios a los pacientes que acuden a la institución, como ocurrió aquí con el Paciente, independientemente de si el médico es empleado, es parte de la facultad médica, o simplemente cuenta con privilegios para ejercer allí.

En efecto, según antes reseñado, cuando un paciente acude inicialmente al hospital, la institución de salud responde vicaria y solidariamente por los actos de los médicos, independientemente de su relación laboral con el hospital. La única excepción a esta norma no aplica en este caso, pues ocurre cuando un médico, sin ser empleado del hospital, utiliza la institución para hospitalizar a su paciente privado.

En este caso, los Demandantes alegaron, y el Hospital no lo ha refutado, que el Paciente acudió a la sala de emergencias del Hospital en busca de asistencia médica urgente. Dado que, en este tipo de circunstancias, el paciente no elige a los facultativos que atenderán su diagnóstico y tratamiento, el hospital deberá responder vicaria y solidariamente por las acciones de los facultativos médicos.

---

[12] Es importante destacar que el TPI no ha recibido prueba alguna en relación con este asunto. Solo se cuenta con la alegación del Médico.

De conformidad con la norma de que existe solidaridad propia o perfecta entre quien es negligente, y quien responde vicariamente por dicha negligencia, cualquier interrupción en este caso en cuanto al Hospital también tuvo el efecto de interrumpir el término en cuanto al Médico. Al haberse interrumpido el término prescriptivo respecto al Hospital a través de la Primera Demanda, ello perjudicó igualmente al Médico, ya que entre ambas partes existe una relación de solidaridad propia o perfecta, como se establece en *Pérez Hernández, supra.* Por tanto, y por esta razón adicional a la consignada anteriormente, el TPI erró al desestimar la reclamación contra el Médico.

IV.

Por los fundamentos expuestos, se revoca la Sentencia apelada y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de manera compatible con lo aquí expuesto y resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones