SOCIEDAD DE GANANCIALES compuesta por LUIS VALLDEJULI ABOY y MARGARITA LÓPEZ DE VALLDEJULI, demandantes y recurridos, *v.* JERONIMO CORPORATION, demandada y recurrente.

*Número:* R-72-327          *Resuelto:* 18 de diciembre de 1974

---

128

*Amadeo, Oliveras & González,* abogados de la recurrente; *José R. Fournier, Ercilia Fournier de Rivera* y *Michel Rachid Piñeiro,* abogados de los recurridos.

PER CURIAM: El 2 de mayo de 1969 la parte demandante recurrida, los esposos Valldejuli, compraron una casa en el barrio Hato Tejas de Bayamón, con solar de aproximadamente una cuerda, por la cantidad de veintinueve mil dólares. La propiedad estaba algo retirada de la carretera estatal número dos. Para llegar a ella había que utilizar un camino municipal conocido por Abra Estrecha, de donde partía otro que conducía exclusivamente a la casa de los esposos Valldejuli, cruzando por una porción de la propiedad de la parte recurrente, Jeronimo Corporation. Jeronimo Corporation poseía desde hacía más de un año, de hecho, la finca que colinda por los lados norte, sur y oeste con la finca de los esposos Vall-

dejuli. Por el sector oeste era que discurría el camino municipal Abra Estrecha.

La propiedad de los esposos Valldejuli se mantuvo desocupada después de su compra excepto por un mes que se la prestaron a un amigo. En noviembre de 1969, conforme la prueba de los recurridos, a la cual le dio entero crédito el tribunal de instancia (véase la Determinación de Hecho Núm. 4), los esposos Valldejuli le arrendaron verbalmente al señor Soto la propiedad por un término de cinco años, para establecer un *bar-restaurant*, por el canon de quinientos dólares mensuales a ser pagados comenzando con el mes de febrero de 1970. El contrato se iba a firmar en dicha fecha (T.E. pág. 36). Mientras tanto, desde el acuerdo original el señor Soto comenzó inmediatamente a hacer las gestiones necesarias para el establecimiento de su negocio (T.E. pág. 86). Prestó las fianzas correspondientes y obtuvo los servicios de agua, luz y teléfono de que carecía la casa; empezó a principios de diciembre a llevar a cabo las obras para preparar la casa; removió el piso de la marquesina para hacer un comedor; construyó dos pistas de baile y el 30 de enero de 1970 recibió el permiso de la Junta de Planificación para operar el negocio interesado. (D. de H. Núm. 4; T.E. págs. 86 y ss.; Exh. 7 de la parte demandante.) En la segunda quincena de diciembre de 1969, durante las Navidades, interrumpió las obras para reanudarlas en enero.

A fines de 1969 y principios de 1970, Jeronimo Corporation llevó a cabo movimientos de tierra y excavaciones en su propiedad y en el camino Abra Estrecha en tal modo que desapareció dicho camino, así como el que conducía de Abra Estrecha a la propiedad de los esposos Valldejuli, quedando ésta aislada (D. de H. Núm. 5). También se destruyeron las líneas de agua, luz y teléfono instaladas, removiéndose, sin volverse a reponer, los postes y la cañería concernidos. (T.E. págs. 14 y ss. y requerimiento de admisiones.) Casi dos años después, cuando el tribunal de instancia efectuó una inspección ocular, la propiedad continuaba enclavada.

La actividad de Jeronimo Corporation provocó que el señor Soto descontinuase los trabajos de preparación de la casa y su negativa a cumplir con el contrato de arrendamiento efectuado (D. de H. Núm. 6).

Algo más tarde, en diferentes ocasiones (T.E. pág. 46), la propiedad de los esposos Valldejuli fue objeto de diversos actos vandálicos: le despegaron las rejas de la casa; se robaron los marcos y las puertas de la casa, los lavamanos, otros efectos de plomería y la instalación eléctrica; y ocurrieron otros daños (D. de H. Núm. 7). A partir de los actos de construcción de Jeronimo Corporation, el señor Valldejuli visitaba su propiedad casi todos los sábados. Desde enero de 1970 no pudo entrar a ella en automóvil, aunque se podía ir a pie. De ahí en adelante—todavía no habían ocurrido los actos de vandalismo—fue a inspeccionar su propiedad tan solo una vez cada tres semanas o una vez al mes (T.E. págs. 49 y ss.).

En el acto del juicio, la parte demandante presentó como testigos al señor Valldejuli, al señor Oscar Soto, al corredor de bienes raíces que medió entre ambos y a dos peritos tasadores, en adición a su prueba documental. La parte demandada no ofreció prueba de ninguna índole. El tribunal de instancia declaró con lugar la demanda el 27 de octubre de 1972, condenando a Jeronimo Corporation a satisfacerles a los demandantes la suma de dieciséis mil dólares por cánones dejados de percibir y siete mil seiscientos treinta dólares por concepto de reparación de su casa. Ordenó además el tribunal que se restituyese el camino municipal Abra Estrecha a la forma y manera en que estaba para el mes de noviembre de 1969 y que Jeronimo Corporation reconstruyese el camino que discurría desde Abra Estrecha hasta la propiedad de los demandantes.

Jeronimo Corporation le imputa al tribunal de instancia la comisión de diversos errores que pueden agruparse en tres categorías principales: un ataque a la concesión de daños por

concepto de cánones dejados de percibir; otro contra la orden de que Jeronimo Corporation reconstruyese el camino que discurría por su propiedad desde la colindancia con Abra Estrecha y los linderos de la propiedad de los esposos Valldejuli; y otro más por los daños concedidos por razón de los actos vandálicos que sufrió la casa.

El primer grupo de errores plantea básicamente un problema de credibilidad. Jeronimo argumenta en su alegato que no existía tal arrendamiento. El tribunal de instancia creyó lo contrario y hay base amplia en los hechos relatados para concluir que el señor Soto efectuó numerosos actos para establecer su negocio en la propiedad de los esposos Valldejuli antes de que se comenzasen las obras que dieron lugar al presente pleito. No hallamos justificación para intervenir con las conclusiones del tribunal de instancia sobre este particular.

Respecto al segundo planteamiento, Jeronimo Corporation alega que el tribunal de instancia carece de facultad para ordenar la reconstrucción de la porción mencionada del camino, ya que a su juicio debían los esposos Valldejuli incoar una confesoria de servidumbre para establecer su derecho a pasar por el terreno de la parte demandada. Arguye además que la única prueba que fundamentaría esta parte de la sentencia es el testimonio del señor Valldejuli en una deposición tomada a iniciativa de Jeronimo de que en un tiempo su finca y la de Jeronimo pertenecían a un mismo dueño—véase el Art. 477 de nuestro Código Civil, 31 L.P.R.A. sec. 1655—pero que la deposición nunca se presentó en evidencia.

Debe recordarse en este contexto el caso de *Don Quixote Hotel* v. *Tribunal Superior*, 100 D.P.R. 19 (1971). En dicho litigio una corporación, sin aviso alguno a la parte afectada, destruyó una servidumbre de acueducto y otra de paso, aunque proveyó otra forma de acceso, menos llevadero. La corporación actuó al amparo del Art. 481 del Código Civil, 31 L.P.R.A. sec. 1673, que reconoce el derecho a alterar las servidumbres que resulten muy incómodas al predio sirviente con tal de

ofrecer a su costa otra vía comparable al predio dominante. Respecto a la servidumbre de acueducto, se negó a repararla. Allí dijimos que no basta "que el dueño del predio sirviente crea que la servidumbre le resulta muy incómoda o que le priva de hacer obras importantes para que él, unilateralmente y sin previas conversaciones y tratos con el dueño del predio dominante proceda a llevar a cabo el cambio. Eso equivaldría a autorizar a alguien a tomarse la justicia por su mano. El derecho existe para sacar al hombre de la jungla y no para meterlo en ella. Tomarse la justicia por la mano equivale a volver al estado primitivo de la jungla." (A la pág. 27.)

■ Jeronimo Corporation también quiso tomarse la justicia por la mano, pero en el caso aún más difícil para ella de no estar actuando so color de autoridad bajo el Art. 481 u otro análogo. Tampoco hubo aviso a los esposos Valldejuli o tratos previos con ellos. Jeronimo ni siquiera investigó el estado del título sobre la servidumbre, ya que no presentó prueba sobre defecto alguno, a pesar de que cuestionó al señor Valldejuli sobre el particular en el curso de la deposición. Resolver que en tales circunstancias le corresponde a la parte perjudicada entablar confesoria de servidumbre representaría en efecto el regreso a la selva que condenamos en *Don Quixote Hotel*. Dentro de los hechos particulares de este caso el peso de la prueba recaía en vez en la causante de los daños. Era a ella que le tocaba presentar el correspondiente recurso de negatoria de servidumbre.

Pero hay más. Después de numerosas gestiones, el señor Valldejuli averiguó el nombre de la corporación que estaba destrozando los caminos que conducían a su propiedad. Se le informó que el ingeniero Marxuach era el encargado de las obras. Habló con él y éste le explicó que donde estaban excavando la corporación haría "una carretera con bitumul, con acera y todo." (T.E. págs. 38, 44, 45.) Esta evidencia, no refutada en el juicio, representa el reconocimiento por Jeronimo Corporation de los derechos afectados de los esposos

Valldejuli o, desde otro ángulo, una obligación libremente contraída cuyo cumplimiento específico puede requerirse. Bajo principios de equidad claramente reconocidos bajo nuestro Código Civil, Jeronimo Corporation está impedida en las circunstancias presentes de cuestionar la existencia de la servidumbre, *Don Quixote Hotel*, supra, 28–29. La referida representación, aun desde el punto de vista más favorable a Jeronimo, creó también, al menos, un caso *prima facie* respecto al derecho que asistía a los señores Valldejuli, caso que no fue refutado por Jeronimo Corporation al abstenerse de presentar prueba.

[2] Consta también en autos, aunque no se presentó en evidencia, la deposición del señor Valldejuli en que se hace referencia a la naturaleza de su título. En vista de las consideraciones anteriores, es innecesario resolver sobre la indispensabilidad bajo los hechos de este caso de exigir la presentación formal de la deposición en evidencia para conocer de la misma, aunque obre en autos. Véase, no obstante, *Pérez Rivera* v. *Olazagasti Fiol*, 90 D.P.R. 779, 785–6 (1964) ; *cf. Ramos* v. *Autoridad de las Fuentes Fluviales*, 86 D.P.R. 603, 610–611 (1962) ; 4A Moore's *Federal Practice*, 2a. ed., 32–43; 8 Wright y Miller, *Federal Practice and Procedure* 451.

Concerniente al tercer planteamiento, se incidió en error al conceder daños por la comisión de los actos vandálicos. Existe en este respecto notable diferencia entre los conceptos de la causa generadora de toda una serie de consecuencias, por remotas que sean, y el de la causa legal. En derecho nos concierne únicamente la segunda. Según señalamos en *Torres Trumbull* v. *Pesquera*, 97 D.P.R. 338, 343–344 (1969) :

"En derecho, una persona no es responsabilizada de todas las posibles consecuencias de su actuación negligente, *Rivera* v. *Pueblo*, [76 D.P.R. 404 (1954)]. Tal persona no es responsable por una causa remota. Un daño parece ser el resultado natural y probable de un acto negligente si después del suceso, y mirándolo retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto."

134

Véase: *Ginés Meléndez* v. *Autoridad de Acueductos,* 86 D.P.R. 518, 521–525 (1962).

■ Se ha desarrollado una gran diversidad de doctrinas en el derecho civil para definir la causa legal o causalidad productora de responsabilidad jurídica. La que ha merecido la mayor atención y la que rige fundamentalmente nuestras decisiones—aunque a veces la terminología empleada deriva del derecho norteamericano, inaplicable a este género de problemas—es la teoría de la causalidad adecuada, conforme a la cual "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general." Santos Briz, *Derecho de Daños,* Ed. Revista de Derecho Privado, Madrid, 1963, págs. 215 y ss.

■ No consideramos que los actos torticeros de Jeronimo Corporation, aunque se consideren parte de una larga cadena causal, deban provocar ordinariamente, según la experiencia general, que unos terceros cometan los actos vandálicos aquí envueltos. Tampoco era razonablemente previsible—criterio derivable de la teoría de la causalidad adecuada, Santos Briz, *op. cit.,* 217–218—que la reacción de los perjudicados, al percatarse de que se comenzaba a saquear su casa, sería la de cruzarse de brazos, sin esforzarse por intentar reducir los daños. *Aponte* v. *Cortés Express,* 101 D.P.R. 31 (1973); *Compañía de Fomento Industrial* v. *León,* 99 D.P.R. 633 (1971); Santos Briz, *supra,* 66 y ss.

Por los fundamentos expuestos *se modificará la sentencia del tribunal de instancia para eliminar de los daños concedidos la partida de siete mil seiscientos treinta dólares por materiales y gastos de obra para la reparación de la casa de los recurridos y así modificada se confirmará.*

El Juez Asociado, Señor Angel Martín, no intervino en la decisión de este caso.