Varona Méndez, Jueza Ponente
TEXTO COMPLETO DE LA SENTENCIA
El 15 de enero de 2005, los demandados-apelantes, el señor Diego I. Hernández Hernández, por sí y en representación de la Sociedad Legal de Gananciales que compone con Jane Doe, presentaron "Escrito de Apelación" para que revisáramos la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual dicho foro declaró con lugar la Demanda y desestimó la Reconvención presentada por la parte apelante. La reclamación surgió a raíz de un accidente automovilístico ocurrido el 1ro. de noviembre de 1995.
I
Se alega como único error que el Tribunal de Primera Instancia debió imputar negligencia al demandante, a la luz de la prueba desfilada.
II
Según se desprende de los hechos probados por el Tribunal de Primera Instancia, el 1ro. de noviembre de 1995, el Sr. Wilfredo H. Vargas Colón, en adelante don Wilfredo, quien para esa fecha era menor de edad, soltero y estudiante, se dirigía en su auto Oldsmobile, Cutlass Calais, Modelo 1989, hacia el Recinto Metropolitano de la Universidad Interamericana, donde estudiaba y trabajaba a jomada parcial. Cerca de las 12:05 de la tarde discurría por la Carretera 177 en dirección de Cupey a Bayamón. Sú clase comenzaba a la 1:00 de la tarde, pero iba temprano para poder hacer gestiones relacionadas con su traslado como estudiante a la Universidad de Puerto Rico. Al aproximarse a la intersección con la Calle Seín, donde se encuentra el Recinto Metropolitano al que se dirigía, don Wilfredo se encontraba transitando el último carril izquierdo de la Carr. 177, la cual es de cuatro carriles, incluyendo uno sólo para hacer virajes hacia la derecha. Observó un auto que discurría por el carril “sc/o” en dirección opuesta que se lanza a la intersección, intentando hacer un viraje hacia su izquierda, que don Wilfredo impactó con su vehículo.
El vehículo impactado por el de don Wilfredo era un auto marca Ford Tempo, que era conducido por el Sr. *1203 Diego I. Hernández Hernández, en adelante don Diego, quien acompañaba a su hija, Rosa Enid Hernández, como pasajera.
El impacto le causó a don Wilfredo la pérdida del conocimiento; al recobrarlo, vio el bonete de su auto todo arrugado, lo que le hizo alterarse y reaccionar de forma agresiva, de acuerdo a sus propias admisiones. La Policía de Puerto Rico acudió al lugar de los hechos a hacer la correspondiente investigación. Una joven, de nombre Maribel López Medina, se les acercó e indicó que había presenciado el accidente y visto que don Diego había rebasado la luz roja en su dirección.
Don Diego también requirió atención médica y fue trasladado en ambulancia al Centro Médico. Don Wilfredo no aceptó su traslado en ambulancia, por temor a la reacción de su madre, con quien residía, al ver el vehículo tras el accidente. Optó por llegar a su casa con el vehículo en la grúa. Aún así, su madre sufrió un fuerte impacto emocional al ver el automóvil.
Posteriormente, don Wilfredo fue atendido en el Hospital San Francisco, donde se le tomaron radiografías e inyectaron analgésicos; fue referido a la Administración de Compensación por Accidentes Automovilísticos (ACAA) para tratamiento.
ACAA lo refirió a un médico fisiatra el Dr. Luna, quien le dignosticó “Cervical Whiplash”, además de recetarle medicamentos y ordenarle servicios de terapia física. Recibió 30 sesiones de terapia física. Para buscar alivio al dolor, se le recetaron analgésicos y anti-inflamatorios y le fueron administrados dos bloqueos epidurales que no resultaron efectivos -pese a haber sido muy dolorosos-, por lo que le fueron descontinuados. Don Wilfredo requirió servicios de tratamiento quiropráctico del Dr. Phillip Estrada durante un año.
Luego del accidente, el apelado don Wilfredo tuvo que renunciar a su empleo a jomada parcial por no poder cargar cajas, según le requerían las tareas asignadas. Su ánimo e interacción social también se afectaron por razón de los dolores que sufría. Tuvo que ausentarse de sus estudios por mes y medio y el vehículo que conducía, que era su único medio de transporte, fue declarado pérdida total. También se vio impedido de continuar practicando los deportes de baloncesto y “rollerblad.es” tras el accidente, como consecuencia de los dolores de espalda que padece.
El Tribunal de Primera Instancia acogió la prueba pericial del Dr. Cándido Martínez Mangual, Fisiatra, quien concluyó que Don Wilfredo padece de Radiculopatía Cervical a Nivel C-6 del lado derecho relacionada al accidente. Esta condición ha hecho que el apelado desarrolle un impedimento físico permanente en las funciones fisiológicas generales equivalentes a un 15% de la persona total.
En su testimonio, Don Wilfredo alegó una pérdida de ingresos de $20,000.00; no obstante, en la demanda reclamó $5,000.00 por este concepto.
Por su parte, la madre de Don Wilfredo, Carmen Iris Colón López, tuvo que alterar su ratina como consecuencia de estos hechos. Sufrió como madre al ver su hijo llorar, descontrolarse y no poder dormir. Tuvo que hacerse cargo de llevar a su hijo a todas sus citas.
Rosa Enid Hernández, en adelante Rosa Enid, trabajaba para la fecha de los hechos en la Universidad Interamericana, mientras realizaba estudios conducentes a un grado doctoral. Ese día, iba con su padre, co-demandado-apelante, a la Universidad. Como consecuencia del choque, recibió lesiones que le produjeron dolor en distintas partes del cuerpo y sintió que se afectaba su respiración, pues siendo asmática, se lastimó la cavidad toráxica.
Como consecuencia de dichas lesiones, Rosa Enid se ausentó de clases cerca de dos semanas. Recibió *1204 terapias en la Clínica de Fisioterapia de El Señorial y tratamientos con varios médicos, incluyendo un neumóíogo y un fisiatra.
Don Diego, padre de Rosa Enid y conductor del auto impactado, quedó inconsciente en la colisión. Fue trasladado al Centro Médico y luego de ser examinado, por ruego del propio Don Diego, se le permitió regresar a su casa. Posteriormente fue recluido en el Hospital del Maestro. Tras ser dado de alta, fue atendido por un fisiatra durante varias semanas, pues le dolía todo el cuerpo. Desarrolló, como consecuencia del accidente, una fibromialgia post traumática cérvico dorsal que se traduce en un 5% de impedimentos físicos permanente de sus funciones fisiológicas generales.
Gloria E. Badía, casada con Don Diego por más de. 35 años, también ha sufrido las angustias y ¡preocupaciones que le han generado el estado de salud de su esposo e hija. La sociedad legal de gananciales compuesta por ésta y Don Diego se afectó como consecuencia de la pérdida total del vehículo.
El Tribunal de Primera Instancia determinó además que a pesar de que Don Diego declaró que no necesitaba [espejuelos hasta un año después del accidente, su licencia de conducir reflejaba tal restricción para el mes de noviembre de 1995. Acotó en su Sentencia que su hija Rosa Enid le manifestó a la agente Morales que no se percató de la luz del semáforo porque estaba “Zoca por llegar” a la Universidad y que Maribel López Medina declaró que Don Diego “frenaba, intentando tirarse [a la intersección donde ocurrió el accidente] y cuando lo | hizo tenía aún la luz roja en su dirección”.
A la luz de las determinaciones de hechos, el Tribunal de Primera Instancia dictó sentencia declarando con lugar la demanda y desestimando la reconvención presentada por Diego, su esposa y la Sociedad Legal de Gananciales compuesta por ambos. En virtud de ello, condenó a la parte apelante a satisfacer a los demandados la suma de $61,100.00, por concepto de la pérdida del auto ($5,500.00); pérdida de ingreso ($5,000.00); gastos médicos ($2,600.00); daños físicos e impedimentos ($46,000.00) y sufrimientos mentales ($2,000.00). Es dicha Sentencia la que da lugar a la apelación interpuesta por los codemandados.
III
Como es sabido, toda acción por daños y perjuicios tiene que cumplir con lo dispuesto en el Art. 1802 del Código Civil. Dicho precepto dispone:

“El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización”.

31 L.P.R.A. see. 5141
Para que se configure una causa de acción por responsabilidad civil extracontractual al amparo del Art. 1802, supra, es indispensable que el demandante pruebe: 1) la existencia de una acción u omisión productora del acto ilícito extrajudicial; 2) la antijuridicidad de la misma; 3) la culpa o negligencia del agente; 4) la producción de un daño; y 5) la relación causal entre la acción u omisión y el daño. Bacó, Administrador del Fondo del Seguro v. ANR Construction Corp., res. el 23 de septiembre de 2004, 2004 J.T.S. 162; Municipio de San Juan v. Bosque Real, S.E., res. el 4 de marzo de 2003, 2003 J.T.S. 33; Jusino Figueroa v. Walgreens, 2001 J.T.S. 154; res. el 1 de noviembre de 2001; Sucns. Vega Marrero v. A.E.E., 149 D.P.R. 159 (1999); Montalvo v. Cruz, 144 D.P.R. 748 (1998); Toro Aponte v. E.L.A., 142 D.P.R. 464 (1997); Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990).
Asimismo, el Tribunal Supremo ha definido la culpa o negligencia como la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Sucns. Vega Marrero v. A.E.E., supra; Montalvo *1205 v. Cruz, supra; Ramos v. Carlo, 85 D.P.R. 353 (1962). Este deber de anticipar y prever los daños no se extiende a todo peligro imaginable, sino a aquél que llevaría a una persona prudente a anticiparlo. Sucns. Vega Marrero v. A.E.E., supra; Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987); Pacheco v. A.F.F., 112 D.P.R. 296 (1982), No obstante, no es necesario que se haya anticipado la ocurrencia del daño en la forma precisa en que ocurrió; basta con que el daño sea una consecuencia natural y probable del acto u omisión negligente. Tormos Arroyo v. D.I.P., 140 D.P.R. 265 (1996).
Al referimos a la omisión, ésta genera responsabilidad civil por negligencia si tal conducta constituye el quebrantamiento de un deber de cuidado impuesto o reconocido por ley y si de haberse realizado el acto omitido, se hubiera evitado el daño. Tormos Arroyo v. D.I.P., supra; Arroyo López v. E.L.A., 126 D.P.R. 682 (1990); Soc. Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94 (1986).
Por su parte, el concepto jurídico de “daño” incluye todo aquel menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica. García Pagán v. Shiley Caribbean, 122 D.P.R. 193 (1988). Ahora bien, no basta la mera existencia de un daño y la acción u omisión negligente. Es imperativo, además, la existencia de un nexo causal entre el daño y el acto culposo o negligente. Es norma reiterada en nuestra jurisdicción que la doctrina que nos rige respecto al nexo o relación causal, es la doctrina de la causalidad adecuada, según la cual “no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general”. Valle Izquierdo v. E.L.A., supra; Sucns. Vega Marrero v. A.E.E., supra; Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, 134 (1974). Es decir, para que exista relación causal, la acción u omisión tiene que ser idónea para producir el efecto esperado, tiene que determinarlo normalmente.
A fin de establecer esa vinculación de causa y efecto entre esos dos sucesos, tenemos que realizar un análisis retrospectivo de posibilidad. No es suficiente que un hecho aparezca como condición de un evento, si regularmente no trae aparejado ese resultado. La causalidad está necesariamente limitada por el ámbito de la obligación, pues es infinita la serie de daños que, en interminable encadenamiento pueden derivarse del incumplimiento de una obligación. Estremera v. Inmobiliaria Rac, Inc., 109 D.P.R. 852 (1980). El mero hecho de que acontezca un accidente, no da lugar a inferencia alguna de negligencia. Bacó v. Rosa, res. el 30 de junio de 2000, 2000 J.T.S. 122; Cotto v. C. M. Ins. Co., 116 D.P.R. 644 (1985). La prueba presentada deberá demostrar que el daño sufrido se debió con mayores probabilidades a la negligencia que el demandante imputa.
Como es sabido, además, el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado, sin que la imprudencia concurrente del perjudicado exima de responsabilidad, aunque conlleva la reducción de la indemnización. Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. § 5141 (Art. 1802); Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 176 (1996). Esto último, se conoce como doctrina de la negligencia comparada, la cual fue adoptada en nuestra jurisdicción por disposición de la Ley Núm. 28 de 9 de junio de 1956, que adicionó la última oración del Art. 1802. H.M. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Publicaciones J.T.S., 1986. Dicha doctrina sirve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximir totalmente de responsabilidad a éste.
Se ha dicho que esta norma tiende a individualizar las indemnizaciones por daños, colocando el rigor económico en las partes, conforme a la proporción de su descuido y negligencia. Requiere que en todos los casos, el juzgador, además de determinar el monto de la compensación que corresponde a la víctima, determine la fracción (o la percentila) de responsabilidad o negligencia que corresponde a cada parte,. y reduzca la indemnización del demandante de conformidad con esta distribución de responsabilidad.
Por lo tanto, el referido Art. 1802 enuncia la norma genérica que prohíbe causar daño a otro mediante conducta activa o pasiva, sin que la participación del demandante o de su causante, exima del derecho a ser *1206 reparado.
IV
Alega la parte apelante que erró el foro de instancia al determinar que de haber mediado alguna culpa o negligencia por su parte, la suya no fue la única, por lo que procede realizar un análisis a la luz de la doctrina de negligencia comparada.
El error señalado no se cometió. En nuestro ordenamiento jurídico opera la doctrina de causalidad adecuada. Un daño parece ser el resultado natural y probable de un acto negligente, si después de ocurrido el suceso y mirando retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto. Montalvo v. Cruz, 144 D.P.R. 748, 756-757 (1998). Para poder determinar si la negligencia de un demandado fue la causa eficiente de unos daños, habrá que determinar si dicha actuación fue la causa razonable y ordinaria del acto, es decir, si ese acto u omisión regularmente produce ese mismo daño. Cuando la acción alegada por los demandantes se basa en la omisión negligente, el derecho puertorriqueño exige un deber previo de actuar de parte del demandado. Soc. de Gananciales v. González Padín Co., Inc., supra, a las pág. 105-106. Una omisión genera responsabilidad civil por negligencia si tal conducta constituye el quebrantamiento de un deber de cuidado impuesto o reconocido por ley y si de haberse realizado el acto omitido, se hubiera evitado el daño. Tormos Arroyo v. D.I.P., 140 D.P.R. 265, 271 (1996); Arroyo López v. E.L.A., supra.
La parte apelante alega que Don Wilfredo transitaba a exceso de velocidad, hecho que no quedó probado ante el Tribunal de Primera Instancia. Tampoco pudo establecer que el accidente ocurrió en una zona escolar. De hecho, del Informe de Querella sólo surge que se trataba de una zona rural (Apéndice, a la pág. 55).
De igual forma, la parte apelante señala que hubo negligencia contribuyente al daño debido a que el apelado Don Wilfredo estaba en el carril extremo izquierdo al momento de doblar a la derecha. Sin embargo, esta no fue la causa de la colisión. Lo que causó el accidente fue la omisión del demandado al no cumplir con las normas de tránsito que requieren detener el vehículo ante la luz roja del semáforo. La causa de la colisión, a base de la prueba desfilada y los hechos probados, no tuvo relación alguna con la dirección hacia la cual transcurría el vehículo de Don Wilfredo.
Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. Argüello v. Argüello, supra. La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987). El juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. Argüello v. Argüello, supra.
Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez v. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. Véase, Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987); Vélez v. Srio. de Justicia, supra.
El alcance de la revisión judicial sobre cuestiones de hechos está regulado por lo dispuesto en la Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43.2. Esta dispone, en la parte pertinente, que las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la *1207 debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos.
Las conclusiones del Tribunal de Primera Instancia encuentran apoyo en la evidencia desfilada en el caso de marras. Ante la ausencia de pasión, prejuicio, parcialidad o error manifiesto por parte de dicho foro, no vamos a intervenir con la apreciación de la prueba.
y
Por los fundamentos expuestos, se confirma la Sentencia dictada por el Tribunal de Primera Instancia.
Así lo acordó el Tribunal y lo certifica la señora Secretaria del Tribunal de Apelaciones.
Leda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones
ESCOLIO 2005 DTA 62
1. El Tribunal de Primera Instancia entendió probado que dicho vehículo, pese a estar a nombre de un tío, era propiedad de Wilfredo, quien lo había adquirido por $5,500.00.