Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI (ESPECIAL)

| | | |
|---|---|---|
| ANJANETTE LÓPEZ AGUSTINI<br><br>*Recurrida*<br><br><br>v.<br><br><br>DR. FULANO DE TAL, SU esposa FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE AMBOS Y OTROS<br><br>*Peticionarios* | KLCE202301280 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.:<br>BY2021CV00965 (504)<br><br><br>Sobre:<br>Impericia médica |

Panel integrado por su presidente, el Juez Rivera Torres, la Jueza Santiago Calderón y la Jueza Álvarez Esnard

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 29 de enero de 2024.

Comparece ante nos el doctor Pierre M. Diomi (Dr. Diomi o peticionario) mediante recurso de *certiorari* intitulado *Petición de Certiorari Civil* y solicita la revocación de la *Resolución*[1] emitida el 31 de agosto de 2023, notificada el 1 de septiembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario). Mediante el referido dictamen, el TPI declaró **"Sin Lugar"** la Moción de Sentencia Sumaria presentada por el peticionario.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y **confirmamos** la Resolución recurrida.

## I.

El 9 de marzo de 2021, la señora Anjanette López Agustini (señora López Agustini o recurrida) instó una *Demanda*[2] de daños y perjuicios por impericia médico-hospitalaria en contra de los doctores Fulano de Tal, Sutano de Tal, Mengano de Tal, sus

---

[1] Véase *Apéndice* del recurso, págs. 903-916.
[2] Véase *Apéndice* del recurso, págs. 1-6.

Número Identificador
SEN2024_____

respectivas esposas y sociedades legales de gananciales, el Hospital Metropolitano, Inc. y otros. En esta, alegó que sufrió daños como consecuencia de un diagnóstico erróneo de gastritis realizado en una visita que hizo a la sala de emergencias del Hospital Metropolitano de Guaynabo los días 6 y 7 de diciembre de 2019. Adujo que, al persistir el dolor abdominal, el 10 de diciembre de 2019, acudió a la sala de emergencias del Hospital Auxilio Mutuo, en donde fue diagnosticada con diverticulitis aguda del colon sigmoides, asociado a perforación. Apuntó, además, que fue hospitalizada en varias ocasiones, esta última vez, el 9 de marzo de 2020, en donde fue atendida por un gastroenterólogo, quien confirmó el diagnóstico de diverticulitis con perforación.

El 1 de julio de 2021, la recurrida presentó una *Demanda Enmendada*[3] para incluir como codemandado al Dr. Diomi. Posteriormente, el 22 de octubre de 2021, presentó una *Segunda Demanda Enmendada*[4] para incluir a la compañía de seguros[5] de este.

El 10 de marzo de 2022, compareció el peticionario mediante *Contestación a Segunda Demanda Enmendada*[6], en la cual, entre sus defensas afirmativas, levantó que la causa de acción en su contra estaba prescrita. Más adelante, el 13 de diciembre de 2022, presentó una *Moción de Sentencia Sumaria*[7], en la cual solicitó al foro primario que dictara sentencia sumaria desestimando con perjuicio la demanda en su contra. En respuesta, el 25 de enero de 2023, la recurrida presentó una *Moción en Oposición a Sentencia Sumaria*[8].

---

[3] Véase *Apéndice* del recurso, págs. 7-19.
[4] Véase *Apéndice* del recurso, págs. 20-32.
[5] Para la fecha de los hechos alegados en la *Demanda*, la compañía de seguros del peticionario era Puerto Rico Medical Defense Insurance Company.
[6] Véase *Apéndice* del recurso, págs. 33-48.
[7] Véase *Apéndice* del recurso, págs. 453-466.
[8] Véase *Apéndice* del recurso, págs. 887-902.

Tras varios incidentes procesales, el 31 de agosto de 2023, el TPI, mediante *Resolución*[9]*,* concluyó que no procedía dictar sentencia sumaria, por entender que existían controversias de hechos genuinas en el caso, las cuales debían dilucidarse en una vista en su fondo. Asimismo, estableció los siguientes hechos:

**HECHOS NO CONTROVERTIDOS**

1. El 9 de marzo de 2021, la parte demandante presentó su demanda. (Ver demanda del 9 de marzo de 2021, SUMAC #1). En la misma, adujo que fue evaluada en el Hospital Metropolitano de Guaynabo, por dolor abdominal, luego de lo cual fue dada de alta el 7 de diciembre de 2019, con un diagnóstico de gastritis.

2. La demanda fue enmendada el 1ro de julio de 2021 (Sumac #5), (donde identifica al Dr. Diomi), seguido de una segunda demanda enmendada, el 22 de octubre de 2021 (Sumac #29), en la que se incluyó a la compañía de seguros del Dr. Diomi.

3. Conforme se alega en la segunda demanda enmendada, la paciente Anjanette López acudió a sala de emergencias del Hospital Metropolitano de Guaynabo, a la 1:23 p.m. del 6 de diciembre de 2019, con queja de dolor abdominal desde hacía tres días.

4. Ese mismo día, fue evaluada por el Dr. Noel Ortiz, quien ordenó estudios de imágenes, laboratorios y medicamentos.

5. Entre las imágenes ordenadas por el Dr. Noel Ortiz, este incluyó un CT Scan del abdomen con contraste oral.

6. A las 4:41 pm ya se tenían los resultados de los laboratorios.

7. El estudio de imagen (CT Scan) fue realizado a las 9:58 p.m.

8. El mismo reveló distención del duodeno con engrosamiento circunferencial.

9. También, reflejó divertículos del colon, más evidente en el colon sigmoides, con engrosamiento irregular de las paredes de este y signos de inflamación peri colónica.

10. La impresión del radiólogo fue correlacionar clínicamente gastro duodenitis aguda, íleo reflejo segmental y diverticulitis segmental temprana del colon sigmoides.

11. Para el 7 de diciembre de 2019, el Dr. Pierre Diomi, laboraba en sala de emergencias del Hospital Metropolitano- Guaynabo. A las 12:53 a.m., reevaluó a la paciente y documentó una nota de alta, indicando que los síntomas se habían aliviado tras el tratamiento en sala de emergencias. A la paciente se le dio de alta con tratamiento de antibióticos, seguimiento con médico primario e instrucciones de acudir nuevamente a la sala de emergencias, si los síntomas regresaban. A las 3:06 a.m. la enfermera completó el alta de la paciente, quien se marchó ambulando en compañía de un familiar.

---

[9] Véase *Apéndice* del recurso, págs. 903-916.

12. El 10 de diciembre de 2019, a las 2:39 a.m., la señora López acudió a la Sala de Emergencias del Hospital Auxilio Mutuo, debido a dolor abdominal.

13. Luego de ser evaluada, se ordenó un CT Scan del área abdominopélvica sin contraste, el cual se realizó el mismo día - 10 de diciembre de 2019. El resultado del CT Scan sin contraste intravenoso reveló que la paciente sufría de diverticulitis aguda del colon sigmoides, asociado a perforación, sin evidencia de formación de abscesos ni flemones.

14. El caso fue consultado con el Dr. Escribano, cirujano. Este evaluó a la paciente el mismo día de admisión. El Dr. Escribano diagnosticó diverticulitis del colon con perforación.

15. El diagnóstico de admisión fue de diverticulitis del intestino grueso con perforación, sin absceso ni sangrado ("DVTRLI LG ONT W/PERF ABSC NO BLEED").

16. El 12 de diciembre de 2019 a las 2:50 p.m. el Dr. Escribano evaluó a la paciente y documentó que la misma tenía menos dolor y flatulencias. Su conclusión fue de diverticulitis complicada con perforación.

17. A su admisión al Hospital Auxilio Mutuo, se consultó al departamento nutricional del hospital, cuyo personal evaluó a la paciente, el 13 de diciembre de 2019. En dicha evaluación, se documenta que se les consulta por diverticulitis del colon con perforación que le había sido diagnosticado a la paciente. Inclusive, documenta haber orientado a la paciente, sobre su condición de forma verbal y escrita y hasta se le entregó un folleto (leaflet), sobre diverticulitis.

18. Prácticamente, en todas las páginas del expediente médico del Hospital Auxilio Mutuo de la hospitalización del 10 al 17 de diciembre de 2019, donde hay entradas de progreso u órdenes médicas, se identifica el diagnóstico de diverticulitis con perforación.

19. El 17 de diciembre de 2019, a las 6:32 p.m., el Dr. Escribano dio de alta a la Sra. López, recuperada de su diverticulitis complicada.

20. Su médico de cabecera para el año 2015 hasta el 2019, fue el doctor Cedeño.

21. Del expediente del Dr. Cedeño se desprende que la parte demandante padece de divertículos desde el 2015.

22. Previo a los hechos que nos ocupa, la demandante había sido hospitalizada en el Hospital Pavía de Hato Rey, donde permaneció del 4 al 7 de junio de 2019, con un diagnóstico de diverticulitis aguda.

23. El 19 de julio de 2022, se le tomó una deposición a la parte demandante, Sra. Anjanette López Agostini.

24. La parte demandante declaró en su deposición que, a su llegada a Sala de Emergencia del Hospital de Auxilio Mutuo, el 10 de diciembre de 2019, se le realizó un estudio del abdomen.

25. La demandante afirma que, durante su hospitalización del 10 al 17 de diciembre de 2019, en el Hospital Auxilio Mutuo, le explicaron que se le había perforado el intestino y que el doctor Escribano le dijo que tenía septicemia con el intestino perforado.

26. El expediente médico de la parte demandante en el Hospital Auxilio Mutuo refleja que su diagnóstico en la hospitalización del 10 de diciembre del 2019 fue diverticulitis aguda, asociada a una perforación.

27. Al cuestionarle a la demandante en su deposición, qué le explicó el doctor Escribano en su hospitalización del 10 de diciembre de 2019, en el Hospital Auxilio Mutuo, sobre su condición, esta declaró: "Bueno, él me pregunta que, si yo me había comido algún pescado, alguna espina o algo... porque él no... él no... él... él no... según su experiencia, él no... él no sabía cómo se había perforado, con el boquete que tenía mi intestino. Y ahí yo le digo: Mire, doctor. Yo vengo de... de... del Metropolitano y me rece... me dijeron cómete esto y tómate esos antibióticos. –y me dijo– Por poco te matan. A ti te debieron de hospitalizar en Metropolitano porque tú estabas tan y tan... y ese intestino estaba ya tan débil, tan... que... que lo hizo fue que te... te obstruyó. El medicamento que te mandaron allá, ellos tenían que ponerte por vena. Te perforó el intestino, te explotó por dentro".

28. La parte demandante, bajo juramento afirma que, lo que le dijeron en el Hospital Auxilio Mutuo en su hospitalización del 10 de diciembre de 2019, le causó un daño irremediable.

Así también, el foro primario estableció los hechos en controversia a saber:

**HECHOS EN CONTROVERSIA**

1. Si la parte demandante se enteró de su daño mientras estuvo hospitalizada, en el Hospital Auxilio Mutuo del 10 al 17 de diciembre de 2019.

2. Si la parte demandante entendió que los daños en la demanda fueron a consecuencia de la perforación del intestino, la peritonitis y la septicemia que le diagnosticaron y le informaron en el Hospital Auxilio Mutuo, durante su hospitalización del 10 al 17 de diciembre de 2019.

En desacuerdo con la determinación, el 18 de septiembre de 2023, el peticionario presentó una *Moción de Reconsideración*[10]. El 16 de octubre de 2023, el TPI declaró **"SIN LUGAR"** la misma.

Aun inconforme, el 15 de noviembre de 2023, el peticionario acudió ante nos mediante *Petición de Certiorari Civil* y señaló la comisión del siguiente error:

Erró el Honorable Tribunal de Primera Instancia al declarar No ha lugar la Moción de Sentencia Sumaria bajo el fundamento de prescripción presentada por el peticionario.

---

[10] Véase *Apéndice* del recurso, págs. 917-927.

El 21 de diciembre de 2023, la recurrida presentó su *Oposición a Petición de Certiorari.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

El auto de *certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[11] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones[12]. Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes *circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto*[13]. Esta norma de deferencia también aplica a las *decisiones discrecionales* de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[14]

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[15]. No obstante, la Regla 52.1, *supra*, faculta nuestra intervención en situaciones determinadas por la norma procesal. En específico establece que:

> […]

---

[11] 32 LPRA Ap. V, R. 52.1.
[12] 4 LPRA Ap. XXII-B, R.40.
[13] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[14] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[15] *García v. Padró*, 165 DPR 324, 334-335 (2005); *Zorniak v. Cessna*, 132 DPR 170, 180 (1992).

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[...]

Con el fin de que podamos ejercer de forma sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, señala los criterios que para ello debemos considerar. Éstos son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

**-B-**

El Tribunal Supremo de Puerto Rico ha expresado en varias ocasiones que la sentencia sumaria es un remedio extraordinario y

discrecional que sólo se debe conceder cuando no existe una controversia genuina de hechos materiales y lo que resta es aplicar el derecho[16]. En términos generales, al dictar sentencia sumaria, el tribunal deberá hacer lo siguiente:

> (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal;
>
> (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos[17].

Analizados estos criterios, **el tribunal no dictará sentencia sumaria cuando existan hechos materiales y esenciales controvertidos**; cuando haya alegaciones afirmativas en la demanda que no han sido refutadas; cuando surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o cuando como cuestión de derecho, no procede[18]. (Énfasis nuestro). La sentencia sumaria se puede dictar a favor o en contra de la parte que la solicita, según proceda en Derecho[19].

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y solo procederá cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos[20]. Es importante mencionar que, este Tribunal utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una moción de sentencia sumaria[21].

Los criterios que este foro intermedio debe tener presentes al atender la revisión de una sentencia sumaria son los siguientes:

---

[16] *Maldonado v. Cruz*, 161 DPR 1, 39 (2004).
[17] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004).
[18] *Íd.*, págs. 333-334.
[19] *Maldonado v. Cruz, supra,* pág. 39.
[20] *Íd.*
[21] *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[22].

**-C-**

En nuestro ordenamiento jurídico "las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia"[23]. A tenor, las obligaciones que nacen de la culpa o negligencia se rigen por lo establecido en el Artículo 1802 del Código Civil de Puerto Rico de 1930[24]. Dicho artículo señala que, "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización"[25].

El propósito del referido artículo es ofrecerle una compensación a la persona que sufra daños y lesiones provocadas por los actos u omisiones ilícitas en que intervenga cualquier género de culpa o negligencia de otra persona[26]. Ahora bien, para que prospere esta acción civil es necesario que la parte demandante

---

[22] *Íd.*

[23] Art. 1042 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 2992. El referido Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 1 *et seq.*, fue derogado por el Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5311 *et seq.*, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, según enmendada, con vigencia desde el 28 de noviembre de 2020. Sin embargo, para propósitos de la adjudicación de este recurso, citamos el Código Civil derogado debido a que los hechos en controversia surgieron durante su vigencia.

[24] Art. 1802 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5141.

[25] *Íd.*

[26] H. M. Brau del Toro, *Daños y Perjuicios Extracontractuales en Puerto Rico,* Segunda Edición, Publicaciones JTS, San Juan, Puerto Rico, 1986, pág. 4.

demuestre, mediante preponderancia de la prueba, (1) que ha habido un acto u omisión culposa o negligente; (2) que hay una relación causal entre el acto y el daño sufrido; y (3) que se ha causado un daño real al reclamante[27].

Nuestro Tribunal Supremo ha definido la culpa o negligencia, como la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto que una persona prudente y precavida habría de prever en las mismas circunstancias[28]. Así pues, la figura de previsibilidad es un elemento esencial de la responsabilidad por culpa o negligencia[29]. Según el Máximo Foro, la previsibilidad "[n]o se extiende a todo peligro imaginable que conceblemente pueda amenazar la seguridad sino a aquél que llevaría a una persona prudente a anticiparlo"[30].

Nuestro ordenamiento jurídico dispone que la previsibilidad está atada al concepto de causalidad[31]. Dicho concepto es conocido como la doctrina de causalidad adecuada y conforme a la jurisprudencia, este dispone que, "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general"[32]. A tales efectos, la figura de causalidad adecuada es un componente imprescindible en una reclamación en daños y perjuicios, ya que "es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico"[33].

Cónsono con lo anterior, en nuestra jurisdicción, la figura de negligencia no se presume y quien la alega debe probarla[34]. No

---

[27] *Toro Aponte v. E.L.A.,* 142 DPR 464, 4 (1997).
[28] *Valle v. E.L.A.,* 157 DPR 1, 18 (2002).
[29] *SLG Colón-Rivas v. ELA,* 196 DPR 855, 864 (2016).
[30] *Íd.*
[31] *Rivera v. S.L.G. Díaz,* 165 DPR 408, 422 (2005).
[32] *Sociedad de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974).
[33] *Rivera v. S.L.G. Díaz, supra,* pág. 422.
[34] *Vaquería Garrochales, Inc. v. A.P.P.R.,* 106 DPR 799, 803 (1978).

obstante, en los casos de daños y perjuicios, la referida figura no se tiene que probar mediante prueba directa y se puede probar mediante prueba circunstancial[35].

**-D-**

En nuestra jurisdicción, la prescripción es una institución de derecho sustantivo que se rige por las disposiciones del Código Civil y constituye una forma de extinción de un determinado derecho debido a la inercia de la relación jurídica durante un periodo de tiempo determinado. El transcurso del periodo de tiempo establecido por ley sin que el titular del derecho lo reclame da lugar a la presunción legal de abandono de éste, lo que en conjunto con la exigencia que informa el ordenamiento jurídico para eliminar la incertidumbre de las relaciones jurídicas, constituyen los fundamentos básicos de la prescripción extintiva[36].

En cuanto a las acciones para exigir responsabilidad extracontractual, **estas prescriben por el transcurso de un (1) año, contado desde que la persona agraviada conoce la existencia del daño y quien lo causó**[37]. (Énfasis nuestro). En otras palabras, **se podrá ejercitar una acción en daños dentro del año a partir de "la fecha en que el perjudicado conoció el daño, quien fue el autor, y desde que este conoce los elementos necesarios para poder ejercitar efectivamente su causa de acción"**[38]. (Énfasis suplido). Esto es lo que se conoce como la teoría cognoscitiva el daño[39]. Sobre el particular, para que esta opere la parte perjudicada tendrá el peso de la prueba para demostrar la

---

[35] *Colón y otros v. K-mart y otros*, 154 DPR 510, 522 (2001).
[36] *García Aponte et al. v. E.L.A.* et al., 135 DPR 137, 142 (1994); *Cintrón v. E.L.A.*,127 DPR 582, 588 (1990).
[37] Artículo 1868 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5298.
[38] *González Rodríguez v. Wal-Mart, Inc.*, 147 DPR 215, 217 (1998); *Martínez v. Soc. de Gananciales,* 145 DPR 93 (1998).
[39] *Maldonado Rivera v. Suárez y otros*, 195 DPR 182, 212 (2016).

fecha en que advino en conocimiento de los elementos necesarios para ejercitar su causa de acción[40].

Es norma reiterada que los términos prescriptivos son susceptibles de interrupción. El Artículo 1874 del Código Civil de 1930[41] establece que la prescripción se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor[42]. El término prescriptivo se entiende interrumpido "cuando el titular del derecho lleva a cabo gestiones que demuestran su interés en reclamar su acreencia"[43].

En el caso particular de las acciones, al amparo del Artículo 1802 del Código Civil de Puerto Rico de 1930[44], estas prescriben por el transcurso de un (1) año contado desde que la persona agraviada conoce la existencia del daño y quien lo causó[45]. Ahora bien, cuando hay más de un causante de un daño se debe interrumpir la prescripción, con relación a cada cocausante por separado, dentro del referido término de un (1) año, si interesa conservar su causa de acción contra cada uno de ellos.

El Tribunal Supremo ha establecido que la presentación oportuna de una demanda contra un presunto cocausante no interrumpe el término prescriptivo contra el resto de los alegados cocausantes, porque tal efecto secundario de la solidaridad no obra en la obligación *in solidum*[46]. Así pues, en las acciones de daños extracontractuales el damnificado debe interrumpir individualmente el término prescriptivo respecto a cada cocausante solidario[47].

---

[40] *Rivera Encarnación v. E.L.A.,* 113 DPR 383, 385 (1982).
[41] Artículo 1874 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5303.
[42] *Íd.*
[43] *Meléndez Guzmán v. Berríos López,* 172 DPR 1010, 1019 (2008).
[44] Artículo 1802 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5141.
[45] Artículo 1868 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5298.
[46] *Fraguada Bonilla v. Hosp. Aux. Mutuo,* 186 DPR 365, 389 (2012), reiterado en *Maldonado Rivera v. Suárez y otros, supra,* pág. 200.
[47] *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra,* pág. 381.

Esta norma adoptada no representa una carga mayor para el demandante, quien solo deberá ejercer con diligencia su causa de acción contra todos los posibles cocausantes del daño cuya identidad conozca[48]. La prescripción de las acciones es un asunto de derecho sustantivo, no procesal, que persigue "evitar la incertidumbre de las relaciones jurídicas y castigar la inacción en el ejercicio de los derechos"[49].

**III.**

Tras una revisión cuidadosa del expediente ante nuestra consideración, colegimos que, la *Moción de Sentencia Sumaria*[50] presentada por el peticionario, cumplió con los requisitos de forma dispuestos en las Reglas de Procedimiento Civil[51]. El peticionario enumeró 30 hechos materiales. Por otra parte, concluimos que la parte recurrida en su *Moción en Oposición a Sentencia Sumaria*[52]*,* no cumplió con los requisitos de forma dispuestos en la Regla 36.3 (a) de Procedimiento Civil[53]. No obstante, no procede conceder el remedio solicitado de forma automática, pues es necesario evaluar si existe una controversia sobre algún hecho material[54]. Veamos.

Asimismo, procedemos a revisar si el foro primario determinó que el caso de autos es uno donde no procede resolverse por la vía de la sentencia sumaria, porque existen o no controversias de hechos materiales. Al respecto, determinamos que el TPI aplicó correctamente el derecho.

Surge del expediente apelativo que el TPI acogió 28 hechos materiales que no están en controversia (enumerados de 1 al 28) de la *Moción de Sentencia Sumaria*[55]*,* los cuales fueron sustentados con

---

[48] *Íd.*, pág. 389.
[49] *García Pérez v. Corp. Serv. Mujer*, 174 DPR 138, 147 (2008).
[50] Entrada número 78 de SUMAc.
[51] 32 LPRA Ap. V, R. 36.4.
[52] Entrada número 84 de SUMAc.
[53] 32 LPRA Ap. V, R. 36.4.
[54] *Meléndez González et al. v. M. Cuebas, Inc., supra*, pág. 137.
[55] Entrada número 78 de SUMAc.

prueba documental admisible. Concurrimos y adoptamos el listado de hechos materiales del foro primario ya expuestos en el tracto procesal de este escrito.

El TPI determinó que los hechos materiales número 29 y 30 propuestos en la *Moción de Sentencia Sumaria*[56] son hechos que están en controversia, a saber:

> 29.     Si la parte demandante se enteró de su daño mientras estuvo hospitalizada, en el Hospital Auxilio Mutuo del 10 al 17 de diciembre de 2019.
>
> 30.     Si la parte demandante entendió que los daños en la demanda fueron a consecuencia de la perforación del intestino, la peritonitis y la septicemia que le diagnosticaron y le informaron en el Hospital Auxilio Mutuo, durante su hospitalización del 10 al 17 de diciembre de 2019[57].

Referente a los hechos materiales número 29 y 30 el peticionario alega que, la causa de acción presentada en su contra el 9 de marzo de 2021 está prescrita, ya que el término prescriptivo comenzó a transcurrir a partir del 10 de diciembre de 2019. Fecha en que la recurrida acudió a la sala de emergencias del Hospital Auxilio Mutuo, donde le diagnosticaron diverticulitis aguda, asociada a perforación.

Por su parte, la recurrida aduce en su alegato que, conforme la teoría cognoscitiva del daño, el término prescriptivo de un (1) año comienza a transcurrir cuando el reclamante conoció, o debió conocer que sufrió un daño, quién se lo causó y los elementos necesarios para poder ejercitar efectivamente su causa de acción[58].

El TPI determinó que no procede resolverse por la vía de la sentencia sumaria, por el tipo de caso que es y porque existen controversias de hechos, entiéndase, los hechos 29 y 30 previamente mencionados.

---

[56] Entrada número 78 de SUMAc.
[57] Véase *Apéndice* del recurso, pág. 909.
[58] *González Rodríguez v. Wal-Mart, Inc., supra*, pág. 217; *Martínez v. Soc. de Gananciales, supra.*

Puntualizamos que, las decisiones discrecionales que toma el Tribunal de Primera Instancia no serán revocadas a menos que se demuestre que ese foro abusó de su discreción[59]. El propósito de esa regla consiste en que los foros apelativos no deben pretender administrar ni manejar el trámite regular de los casos ante el foro primario[60]. Al revisar la *Resolución* impugnada de *novo,* nos resulta forzoso concluir que en el presente caso existen controversias de hechos materiales con relación a la fecha en que la recurrida se enteró de su daño, así como de los elementos para poder ejercitar su causa de acción. Al igual que determinó el foro primario, colegimos que, no procede dictar sentencia sumaria a favor del peticionario. Coincidimos con el criterio del TPI que, en su discreción y búsqueda de propiciar una solución justa, entendió que era necesaria la celebración de una vista en su fondo para dilucidar las controversias.

**IV.**

En vista de lo anterior, expedimos el auto de *certiorari* y **confirmamos** la Resolución recurrida. Consecuentemente, devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[59] *SLG Zapata v JF Montalvo,* 189 D.P.R. 414, 434 (2013).
[60] *Íd.*